# Nelson *v.* The State.

*Indictment for Murder.*

1. *Homicide; res gestae; when declarations admissible as part thereof.*—On a trial under an indictment for murder, whether declarations as to the cause and particulars of the fatal difficulty are within the *res gestae* thereof, depends upon whether the circumstances are such as that it may be affirmed with reasonable certainty that the declarations were produced by and instinctive upon the occurrences to which they relate, rather than the retrospective narration of such occurrences. If the declarations were made so soon after the difficulty as that

[Nelson v. The State.]

under the particular circumstances transpiring between the difficulty and the declarations it is reasonably clear that they sprung out of the transaction and were un unpremeditated statement thereof, and not a mere statement of the facts, as held in the memory of a past transaction, such declarations constitute a part of the *res gestae* of the difficulty and are admissible.

2.  *Same; same; same.*—On a trial under an indictment for murder,where a witness testified that within two minutes after the firing of the fatal shot, and while the deceased was in flight and yet within range of the assailant's gun, and was continually within the sight and hearing of the witness, deceased came to where the witness was standing, it is competent for the witness to testify as to what the deceased said to him about the cause and particulars of the difficulty, immediately upon his coming up to him; such declarations of the deceased being a part of the *res gestae* of the shooting.

3.  *Same; admissibility of evidence.*—On a trial under an indictment for murder, where the evidence shows that the defendant killed the deceased by shooting him with a shot gun, the disposition which the defendant made of the gun after the shooting is irrelevant to any issue in the cause, but its admission being without prejudice to the defendant will not work a reversal of the judgment of conviction.

4.  *Same; same.*—On a trial under an indictment for murder, during the cross-examination of the defendant, it is competent for the State to show the facts relative to his having escaped after his imprisonment in jail.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. JOHN MOORE.

The appellant, Charley Nelson, was indicted and tried for the murder of one Shelley Sumner, was convicted of murder in the first degree, and sentenced to be hanged.

During the cross-examination of the defendant as a witness, and after he had testified that it was several months after he shot the deceased with a gun before he was arrested, he was asked the following question: "What did you do with the gun with which you shot Mr. Sumner?" To this question the court objected upon the ground that it called for illegal, irrelevant and immaterial evidence, the court overruled this objection, and the defendant duly excepted. The defendant as a

witness, answered the question as follows: "I sold it
to a man living near Buguechitto, Alabama, by the name
of Joe Mosley." The defendant moved to exclude this
answer from the jury on the ground that it was illegal,
irrelevant and immaterial evidence. The court over-
ruled the motion, and the defendant duly excepted.
The defendant was then asked, on further cross exami-
nation, several questions relating to the manner of
his making his escape from jail. The defendant ob-
jected to each of these questions, upon the ground that
it called for illegal, irrelevant and immaterial evidence,
and separately excepted to the court's overruling each
of his objections thereto. The other facts of the case
necessary to an understanding of the decision on the
present appeal, are sufficiently stated in the opinion.

WALTER R. SHAFER, and CHAMBLISS KEITH, for appel-
lant, cited *Governor v. Campbell*, 17 Ala. 574; *Galbreath
v. Cole*, 61 Ala. 142; *Dyson v. State*, 26 Miss. 362;
*Candy v. Humphries*, 35 Ala. 517; *Domingus v. State*,
94 Ala. 12; *Martin v. State*, 89 Ala. 120.

CHARLES G. BROWN, Attorney-General, for the State,
cited Wharton's Cr. Evidence, § 750; *Revel v. State*, 26
Ga. 275; *Domingus v. State*, 94 Ala. 12; *Cooper v. State*,
61 Ala. 81.

McCLELLAN, C. J.—The appellant, Charley Nelson,
was tried on an indictment charging him with the mur-
der of Shelley Sumner, convicted of murder in the first
degree, and sentenced to be hanged. The testimony for
the State went to show that the defendant shot the de-
ceased with a shotgun loaded with buckshot in the back,
as Sumner was riding rapidly away from him on a mule;
the shot entering as from the right side and ranging for-
ward and toward the left through the body, and that
when shot Sumner was leaning forward in the saddle.
The State's witnesses gave no account of the origin of
the affair nor of the particulars further than we have
stated. They were one hundred and fifty or two hun-
dred yards away from the point whence the shot was
fired, and their attention was first attracted by the

sound of the galloping of deceased's mule away from defendant. The defendant himself testified as follows: "I had been at the gin house of Mr. VanPelt all day, and when he closed down, Porter Coleman and myself went off up the public road going in a direction from Richmond. After we had gone down the road nearly a hundred yards I looked up and saw a wagon coming toward us. In the wagon I soon recognized James Pate and Frank Dudley. Behind the wagon was Shelley Sumner riding towards us on a mule. Before Porter and I met the wagon Sumner rode around the wagon and came toward us. When I noticed him again he had passed the wagon and pulling his pistol from his pocket he rode up within a few feet of me, stopping his mule and pointing the pistol in my face, said: 'halt you son of a bitch.' I halted—the pistol was still in my face. He then said : 'I am going to kill you, you damn black son of a bitch.' I said : 'I have done nothing for you to kill me Mr. Sumner.' He said : 'Yes you have, damn you,' and then snapped his pistol three times in my face. I had a shotgun with me—it was in my left-hand hanging down by my left side. When he saw that his pistol would not fire, he called to Porter to grab my gun. Porter was two or three yards from me when Sumner told him to take my gun. Porter made an effort to get my gun and I grabbed for Mr Sumner's pistol. He, Mr. Sumner, then rode off up the road in a gallop, and when about 15 or 25 feet from me he turned in his saddle, aiming pistol at me, he snapped it again. It was at this time that I fired the fatal shot. When I shot him his mule was not straight up and down the road, was angling from right to left across the road. With his mule in this position and having turned slightly in his saddle it caused his back and right side to be exposed to me." Mrs. Houston, a witness for defendant, lived near the scene of the shooting, and she testified that she heard loud cursing and talking out in the road in front of her house and that upon going to the door she saw Sumner with a pistol pointing in the direction of Nelson's face, and that she then ran out in the back yard where her husband was, and in a little while heard a gun fire. John C. Stoutenborough, an-

other of defendant's witnesses, testified as follows: "I was at the VanPelt gin house at the time of the difficulty. * * * Mr. VanPelt [the State's main witness] and I were leaning against a bale of cotton talking. Hearing a gun fire and the bullets hitting in the branches of the trees just over my head, I turned around and recognized Shelley Sumner on a mule galloping slowly down the road toward the gin house. Behind him about twenty feet and a few feet to the right stood Charley Nelson with gun in hand. I ran down the road leading from the gin house to the public road and met Sumner. Was with him in about two minutes after I heard the gun fire. When I got to Sumner he had a pistol in his right hand—the hand hanging down by his side. In his left hand he held his bridle reins. From the time that I heard the gun fire up to the time I met him in the public road, he was continually in my sight and hearing." At this point in his testimony, the witness was asked this question by defendant: "Did Sumner say anything to you about the cause and particulars of the difficulty immediately upon your coming up with him in the road?" And the witness replied: "He did." The defendant then asked: "What did he say?" To this question the State objected on the grounds that the evidence thus sought to be elicited was "illegal, irrelevant and immaterial, and was not a part of the *res gestae.*" "The court sustained the objection, and refused to permit the witness to state what Mr. Sumner said to him," and to this ruling defendant excepted. Of course, if the wound had not produced death and the defendant were on trial for assault with intent to murder, Sumner's testimony as to the "cause and particulars of the difficulty" would be legal, material and relevant. So that it is clear that the proposed testimony of Stoutenborough as to Sumner's declarations in respect of the cause and particulars of the difficulty cannot be said to be either immaterial or irrelevant; and there is no ground for holding it to be illegal unless it be that going to the vehicle of the proposed evidence or, in other words, that it was mere hearsay. And so it was mere hearsay if it was not of the *res gestae* of the main fact, the shooting. And that, therefore, is the question for our decision

in this connection: Whether the declarations of 'Sumner as to the cause and particulars of the difficulty constituted a part of the substantive transaction—were within the *res gestae* of the difficulty. And this depends upon whether the circumstances are such as that it may with reasonable certainty be affirmed that the declarations were *produced* by and *instinctive* upon the occurrences to which they relate rather than a *retrospective narration* of them. If they are the ebullition of a state of mind engendered by what happened and not a mere statement of the facts as held in memory of a past transaction—if they were made so soon after the difficulty as that, under the particular circumstances transpiring between the difficulty and the declarations, it is reasonably clear that they sprang out of the transaction and stand in relation of unpremeditated result thereto, the idea of deliberate design in making them being fairly precluded and tend to elucidate the difficulty—they are to be regarded as contemporaneous with the main transaction and as a part of it within the rule as to *res gestae*. In our opinion the circumstances detailed by the witness Stoutenborough bring the declarations made to him by Sumner within the rule of admissibility. Sumner had just been desperately wounded. He was in flight, and yet within the range of his assailant's gun. Only two minutes had elapsed since the actual shooting. There had, it would seem, been no opportunity for the formulation of a deliberate statement. The supervening circumstances were all the product of the difficulty. Indeed it may be said that these circumstances were of the difficulty itself. It appears with reasonable certainty that what he then and there said to the witness was instinctive upon the difficulty, the spontaneous givings out of a mind in the thrall and shadow of the mortal assault, and in immediate and strenuous effort to escape further danger still imminent, and not a mere narration of a past transaction. *Smith v. State,* 52 Ala. 407; *Domingus v. State,* 94 Ala. 12; *Gandy v. Humphries,* 35 Ala. 617; *Mayberry v. State,* 107 Ala. 64, 67-8; *Insurance Co. v. Moseley,* 8 Wall. 397; *Thompson & Wife v. Trevanion,* Skinner, 402; *The King v. Foster,* 6 Car. & P. 325; *Commonwealth*

*v. Pike,* 3 Cush. 181; *Warren v. State,* 9 Tex. App. 619; *Stevenson v. State,* 69 Ga. 68. And we, therefore, hold that the circuit court erred in excluding the proposed testimony of the witness Stoutenborough as to the declarations of Sumner relating to the cause and particulars of the shooting. Of course we cannot affirm that this error involved no injury to the defendant since the declarations are not set out in the bill of exceptions, but we must presume that injury resulted from the error; and for it the judgment must be reversed.

The testimony drawn from the defendant against his objection that he sold the gun with which he shot Sumner "to Joe Moseley, who lived near Boguechitto, Alabama," does not appear to have been relevant to any issue of the case; but its admission would not require a reversal as it could not have prejudiced the defendant.

There was no error in any other of the rulings upon the admissibility of testimony.

Reversed and remanded.