122 So.2d 920

**Posey HORTON**

v.

**STATE.**

**8 Div. 591.**

Court of Appeals of Alabama.

March 2, 1960.

Rehearing Denied April 5, 1960.

Britnell & McEntire, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

The Attorney General has moved to strike the transcript of the evidence in this record because not timely filed with the circuit clerk.

Notice of appeal was given on 13 March 1959.

On 2 May 1959, and within sixty days of the date of appeal, the appellant filed a petition with the court below requesting an extension of time for filing the "transcript of the record," and as grounds therefor "states that the court reporter of this honored court is so burdened with the preparation of transcripts that it will be impossible for her to prepare the transcript for the appeal in this case within the sixty day period allowed by Rule 37, Rules of Practice in the Supreme Court of Alabama, Title 7, 1940 Code of Alabama, [appendix], as amended."

The court granted said motion and granted "an extension of thirty (30) days beyond the sixty-day period within which the transcript in the above styled cause should be filed with the Clerk of the Court of Appeals of Alabama."

Since the court reporter must prepare the transcript of the evidence for filing with the Circuit Court, it is apparent that the petition sought an extension of time for the filing of transcript of the evidence with the circuit clerk. Otherwise the ground asserted would be meaningless.

Supreme Court Rule 37 has nothing whatsoever to do with extending the time for filing the transcript of the evidence with the circuit clerk, but pertains to the filing of the full record in this court. Extensions of time for filing the transcript of the evidence with the circuit clerk are procured under the provisions of Sec. 827 (1a), Tit. 7, Code of Alabama 1940.

It is apparent therefore that both the petition and the order are ineptly drawn.

We think it clear, however, that in view of the grounds upon which the petition is based that the petition sought an extension of time for filing the transcript of the evidence with the clerk below and that the court, by its order intended to extend this time, and did do so, and that the last four words of its order "of Appeals of Alabama" must be treated as surplusage.

With the extension of time of thirty days, the transcript of evidence was filed.

The motion to strike the transcript of the evidence is therefore denied.

Under an indictment charging murder in the first degree, this appellant has been adjudged guilty of manslaughter in the first degree and sentenced to a term of eight years in the penitentiary.

In brief, counsel for appellant have pointed out at length contradictions in the testimony of the State's witnesses, not only as measured by the defense evidence, but also when measured by testimony given by the State's witnesses in a preliminary hearing, or in previous oral or written statements by them. All such contradictions were before the jury, and they were the sole arbiters of the ultimate credibility to be accorded the State's evidence. Out of all of the welter of evidence, it is abundantly clear that this appellant shot and killed the deceased in deceased's own home at around 3:00 A.M. This salient fact was perhaps of considerable import to the jury despite the fluctuating character of the testimony of witnesses.

The evidence shows that the appellant Posey Horton, and the deceased, Arthur Stewart, were brothers-in-law. They lived near each other in a section of Decatur known as "Oklahoma," admittedly a rough neighborhood and one to which law enforcement officers received frequent calls.

The evidence further shows without dispute that the deceased's son, Arthur, Jr.,

had been on a visit to his parents for several days prior to the shooting. There had been visiting between the families of the appellant and deceased, and the two families had made a trip to Limestone County to visit a relative the afternoon preceding the shooting. It is clearly inferable that whiskey was not absent at these get-togethers, the appellant testifying that he and Stewart had bought whiskey together for Arthur Jr.s' visit.

The evidence presented by the State, in its mainstream, tends to show that appellant and deceased had been together drinking on the night of the shooting. After they were in their respective homes, the appellant telephoned the deceased's home and talked to Jessie Mae Stewart, deceased's wife (appellant's sister). According to Jessie Mae, appellant wanted to know if Arthur was shooting at him, and being told "No" he stated he was coming up and kill Arthur. Jessie Mae begged him not to come to their house, but he replied "I'm coming after him." At this time the deceased left the house with his shotgun. Shortly the shooting occurred.

The evidence for the defense was directed toward showing that Jessie Mae Stewart had called appellant over the phone and requested that the appellant come to the Stewart home and help her get the drunken Arthur to bed. When appellant went upon this errand he was ambushed by the deceased, but killed deceased in the exchange of gunfire. Appellant was shot in the leg and this wound necessitated the amputation of the leg.

During the cross-examination of Hattie Dancey, a witness for the State, also known as "Big Hattie," she testified she had been to Arthur Stewart's house the afternoon of the shooting in order to get the appellant and go to his home and get a drink. The record then shows the following:

"Q. You were up to Arthur Stewart's house that day? A. I didn't go up there in the afternoon. I didn't go to Arthur's after no whiskey, because they didn't sell no whiskey.

"Mr. McEntire: We move to exclude that.

"The Court: Motion overruled.

"Mr. McEntire: We except.

"The Court: The statement was that 'they didn't sell none'?

"Mr. McEntire: Yes, sir. It wasn't responsive to my question.

"The Court: Motion overruled.

"Mr. McEntire: We except.

"The Court: I don't think that is harmful to either the defendant or the State."

Counsel for appellant strenuously contend that the action of the court in the above instance constitutes reversible error in that the chief inference that must be rationally drawn from such testimony is that the appellant must have been engaged in the sale of whiskey, since Hattie testified she went to the Stewart's home to get appellant to go to his home to get her a drink, because the Stewarts "didn't sell no whiskey."

Counsel further point out that this inference of bootlegging on the part of the appellant is highlighted by the Solicitor's statement to the jury that "Big Hattie was hanging around Posey Horton's honky-tonk."

That part of Hattie's reply that the Stewarts "didn't sell no whiskey" was clearly nonresponsive, and should have been excluded. The court refused to exclude, stating it did not think the answer harmful to either the defendant or the State. In this we think the court mistaken, in that the answer, in its surroundings, tended to show the appellant guilty of selling whiskey, an offense separate from the

one for which he was on trial. Such evidence ordinarily is not admissible unless within one of the exceptions to the basic rule. See McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528; McCary v. State, 39 Ala.App. 642, 107 So.2d 903. None of the exceptions are present in this instance.

Hattie was at appellant's home just prior to the shooting. There is nothing in the evidence tending in any wise to show that Posey sold any whiskey from his home, though he and deceased, and perhaps other relatives had had some drinks there. The Solicitor, in his argument to the jury stated: "Big Hattie was hanging around Posey Horton's honky-tonk." The appellant's objection to the argument was overruled.

In Nix v. State, 32 Ala.App. 136, 22 So.2d 449, 450, the late Presiding Judge Carr, in determining the meaning of the word "honky-tonk" defined it as meaning a public place, or a "low drinking resort." There is nothing in the record to indicate that Posey Horton's home was a public drinking place of low order. The statement was one which should be considered as calculated to prejudice the appellant in the eyes of the jury.

Perhaps the statement of Solicitor, standing by itself, is not of sufficient seriousness to cause a reversal of this judgment in view of appellant's bad reputation and the reputation of the community "Oklahoma" in which he lived. Perhaps too, it could be argued that the action of the court in leaving before the jury Hattie's statement that the Stewarts did not sell whiskey, with the resulting inference that appellant did, should not cause a reversal in that the inference was speculative. We are clear to the conclusion that, when taken in combination, the two rulings in the above instances were erroneous and probably injurious to the substantial rights of the appellant.

Reversed and remanded.