**14**

150 So.2d 405

**Sylvester RUSSELL, Jr.**

v.

**STATE.**

**2 Div. 45.**

Court of Appeals of Alabama.

Feb. 19, 1963.

---

Thos. F. Seale, Livingston, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Judge.

A resume of the facts appears in the within dissenting opinion of Judge JOHNSON.

Out of the blue, the solicitor, in Nix v. State, 32 Ala.App. 136, 22 So.2d 449, stated in closing argument. "These Negroes were running a honky tonk out there," and thereby worked reversal. Judge Carr concluded this characterization was made as of fact. But it was without support in the evidence. That fault, coupled with the prejudicial import of "honky tonk," tipped the balance.

Combined with the court's refusal to exclude a volunteered innuendo by a witness that the defendant sold whiskey, the solicitor's arguing that she "was hanging around Posey Horton's honky-tonk" brought reversal here, per Harwood, P. J., Horton v. State, 41 Ala.App. 16, 122 So.2d 920. Mr. Justice Simpson denied the State's petition for certiorari, 271 Ala. 699, 122 So.2d 923.

The first witness to use "honky tonk" in the case of instant concern was describing a place beside the road along which he drove. The defendant was not shown by him to be there.

Another prosecution witness's use of the term came into evidence without objection. Without objection the solicitor thrice asked the defendant if he (or his car) had been at the "honky tonk" before the collision.

There was evidence from which, if credited to the degree required in a criminal prosecution, the jury could infer guilt of voluntary manslaughter, e. g., (1) driving a motor vehicle at night on an unlighted road without the headlights working, (2) at a considerable speed, (3) in the lane reserved by law for oncoming cars, and (4) having the headlights of an oncoming car shining where a reasonable person could see their light.

In such circumstances, even if the jury believed a tire on the defendant's car blew out, they could as readily treat his conduct after the blowout as an aggravation of other recklessness as they could look on the blowout as a mitigating factor. Reynolds v. State, 24 Ala.App. 249, 134 So. 815;

Rainey v. State, 245 Ala. 458, 17 So.2d 687.

The judgment is due to be

Affirmed.

PRICE, P. J., concurs in the foregoing opinion.

JOHNSON, Judge (dissenting).

Appellant, Sylvester Russell, Jr., appeals from a conviction of first degree manslaughter in the Circuit Court of Sumter County. He was indicted for the first degree manslaughter of Lewis T. Whittlesey, Jr., who was killed when the automobile in which he was riding collided with the automobile being driven by the appellant on U.S. Highway 80 in Sumter County on May 27, 1961. Whittlesey died a few hours after the collision from injuries received therein. Appellant's motion for a new trial included the grounds that the verdict was contrary to law and not sustained by the preponderance of the evidence.

Leonard Sessions, who was driving the 1955 Plymouth automobile in which Whittlesey was riding at the time of the collision, testified that Whittlesey was riding on the right front seat and that Lester Trulove and Robert Williams were riding on the back seat of the 1955 Plymouth at about 11:20 P.M. According to the testimony, Sessions was driving at a speed of 40 or 45 miles per hour on the right side of the road as the occupants of the car were returning home from work, and he saw a car without lights approaching on his side of the road about ten feet away and applied his brakes and tried to turn to the right to miss it but failed to do so. Sessions also testified that the appellant's automobile involved in the collision was "about a '53 Plymouth" and that Whittlesey and the other two passengers were knocked unconscious in the collision. The court overruled defendant's timely objection to Session's reference in his testimony to a building which he passed just before the collision as a "honky-tonk". This was the same place at which Deputy Sheriff Melvin Stevens later testified he saw defendant's automobile parked about half an hour before the collision.

Trulove and Williams corroborated Session's testimony as to the purpose of their being on the road and the speed of the car in which they were riding. Both testified that they did not see the appellant's car approaching.

Highway Patrolman M. D. King testified that he arrived at the scene at 11:40 P.M. and found that the automobiles involved in the accident had not been moved from the point of the collision. He found skid marks on the highway from each vehicle and they were all "on Mr. Sessions' side of the road". He testified that "about thirty yards directly in front of the impact on Mr. Sessions' side of the road, vehicle two [appellant's automobile] left marks of twenty-four feet and then there wasn't any more marks", and the Sessions' car "left seven foot skid marks before the impact"; that there was a lot of damage to both cars, especially to the fronts; and that he had a conversation with appellant in which he asked him, "What were you doing on this side of the road?", to which the appellant replied that he had had a blowout which threw him over into the left lane. When asked about the skid marks from appellant's car, King replied that he couldn't tell whether they were blowout or brake marks. Sessions was recalled as a witness and testified that he had his lights on at the time of the wreck.

The State rested and the appellant testified that he was driving his automobile at about 40 or 45 miles an hour from Bellamy, Alabama, with three "boys". He testified that he had a blowout on the front right tire which pulled him to a ditch and that he "made a cut to keep out of the ditch, and that car come over the hill and the light blinded me, and that's all I remember." We find no testimony on direct examination to the effect that his own lights were turned on but to his counsel's

question, "You say your lights went out?", he answered, "No sir. My lights didn't go out". He and the others in his car were injured. On cross-examination he testified that he had not been at the "honky-tonk" near the place of the wreck, and that he had his car with him all night and that his lights were on. Three witnesses then testified that they knew the general reputation of the appellant in the community in which he lived and that it was good.

After the defense rested, Chief Deputy Sheriff Melvin Stevens of Sumter County testified without objection that he knew appellant's car and that at about a quarter to eleven o'clock on the night of the collision he saw the automobile parked inside the gate of the "honky-tonk". This is the same "honky-tonk" which witness Sessions, over defendant's timely objections, testified that he passed immediately before the collision.

The solicitor elicited the following testimony from the State's first witness, Sessions:

"Q. And you were driving along there. Did you see anything along the road immediately before the wreck took place?

"A. There was a lot of cars parked there at that joint on the side of the road.

"Q. A number of cars were parked there at this joint; what kind of joint is that?

"A. I'd say it was * * *.

"MR. SEALE: I object.

"Q. If you know?

"COURT: Yes sir. He can state what was operated there. If it was a store or whatever it is, he can state the facts.

"A. I would say it's a liquor joint myself.

"MR. SEALE: Now I object and move to exclude that answer.

"COURT: Yes sir. The answer of the witness is excluded from your consideration, gentlemen. It is not evidence before you. Now he can state whether the store was operated by somebody or give some description of it.

"A. I don't know who it was operated by.

"COURT: Was it a store?

"A. I couldn't say.

"Q. Well, a short rendition of it, was that what you call a honky-tonk?

"MR. SEALE: I object to that your Honor.

"A. Right.

"COURT: Overrule the objection.

"MR. SEALE: We except."

Deputy Stevens, on rebuttal at the end of the trial, testified as follows:

"Q. Did you see the car of Sylvester Russel, Jr., the defendant, in this case, parked at that honky-tonk that night?

"A. Yes sir."

Nix v. State, 32 Ala.App. 136, 22 So.2d 449, defines honky-tonk as "a low drinking resort" which definition is adopted from Webster's New International Dictionary, Second Edition, at page 1196, and Cumulative Annual Pocket Part of 19 Words and Phrases, Perm. Ed.

It was proper for the State to show that Deputy Stevens had seen the defendant's automobile at a place different from that where the defendant testified it had been, but it was improper and prejudicial to the rights of this defendant for the trial court to permit this place to be referred to by witnesses Sessions and Stevens as a honky-tonk or liquor joint. We find in the record no evidence of the defendant indulging in intoxicating beverages at any time and the record does not reflect that such was con-

tended by the State. To permit the jury to consider that the place was a honky-tonk authorized them wrongfully and prejudicially to infer that the defendant had possibly been drinking immediately before the collision.

In Nix v. State, supra, defendant was convicted of assault with a weapon inside a cafe she operated. In his closing argument to the jury, the solicitor stated, "These negroes were running a honky tonk out there". The evidence showed that no alcoholic drinks were served at the cafe but only food and soft drinks and that the defendant had a reputation for good character. In reversing the conviction, the court held: "If the unauthorized declaration of the prosecuting officer led the jury to believe that appellant was running a 'low drinking resort,' this was calculated to prejudice their minds against the interest of the defendant, who admittedly was proprietress of the cafe."

In Horton v. State, 41 Ala.App. 16, 122 So.2d 920, there was evidence of drinking in defendant's home. In final argument to the jury the solicitor stated, "Big Hattie was hanging around Posey Horton's honky-tonk." On Appeal this court, speaking through Judge Harwood, stated: "There is nothing in the record to indicate that Posey Horton's home was a public drinking place of low order. The statement was one which should be considered as calculated to prejudice the appellant in the eyes of the jury." The conviction of manslaughter in the first degree was reversed.

In the Nix and Horton cases, supra, this court held that the defendant's rights were prejudiced because there was an unauthorized argument to the jury by the solicitor that the defendants were trafficking in whiskey. In the case before us, I believe that the prejudice against the rights of the defendant is probably greater because the possible unauthorized inference is generated in the minds of the jury from sworn testimony and not merely from the solicitor's closing argument.

I, therefore, must respectfully dissent.