283 So.2d 650

**Mose Jefferson DAVIS**

v.

**STATE.**

**6 Div. 481.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

E. C. Herrin, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Donald G. Valeska, II, Asst. Atty. Gen., for the State.

ALMON, Judge.

Appellant was indicted for first degree murder. He was found guilty by a jury of first degree manslaughter and his punishment was fixed at ten years in the penitentiary.

The State's evidence tends to establish the following facts:

On June 19, 1971, appellant went to the home of Frank Felton, the deceased. The appellant and Felton began to argue concerning appellant's visit. As the argument progressed, the appellant, while standing on the front porch of Felton's home, took a knife from his pocket and opened the blade. Felton then went into the house, got an iron skillet, and threw it at the appellant. After Felton threw the skillet, the appellant threatened to kill him. Felton then went back out and argued with the appellant. A neighbor, Joe Sawyer, appeared and tried to end the argument but left before any blows were struck. Felton returned to his home and went to the back porch where he and the appellant continued to argue. A neighbor, Linda Sanders, testified that she saw the appellant step up and stab Felton in the chest as he turned to go into the house. Ruby L. Felton, with whom the appellant had been living for six years, testified that she heard the argument stop and immediately went to the back of the house to see what had happened. She stated that Felton came in the back door and told her that the appellant had cut him.

I

Appellant contends that the trial court committed reversible error in permitting Ruby Felton to testify that the deceased accused appellant of having stabbed him. The thrust of appellant's argument is that the accusation was a dying declaration and that the State failed to lay the proper predicate. We are of the opinion that the decedent's declaration was properly admitted as a startled utterance or spontaneous declaration. The record clearly shows that the accusation was a part of the res gestae of the difficulty. Kelley v. State, 32 Ala. App. 503, 27 So.2d 512; Hutchinson v. State, 15 Ala.App. 96, 72 So. 572.

Nelson v. State, 130 Ala. 83, 30 So. 728, is pertinent to the case at bar. There, the Court said:

"... And that, therefore, is the question for our decision in this connection: Whether the declarations of Sumner as to the cause and particulars of the difficulty constituted a part of the substantive transaction—were within the *res gestae* of the difficulty. And this depends upon whether the circumstances are such as that it may with reasonable certainty be affirmed that the declarations were *produced* by and *instinctive* upon the occurrences to which they relate, rather than a *retrospective narrative* of them. If they are the ebullition of a state of mind engendered by what happened and not a mere statement of the facts as held in memory of a past transaction—if they were made so soon after the difficulty as that, under the particular circumstances transpiring be-

tween the difficulty and the declarations, it is reasonably clear that they sprang out of the transaction and stand in relation of unpremeditated result thereto, the idea of deliberate design in making them being fairly precluded, and tend to elucidate the difficulty—they are to be regarded as contemporaneous with the main transaction, and as a part of it within the rule as to *res gestae*. In our opinion the circumstances detailed by the witness Stoutenborough bring the declarations made to him by Sumner within the rule of admissibility. Sumner had just been desperately wounded. He was in flight, and yet within the range of his assailant's gun. Only two minutes had elapsed since the actual shooting. There had, it would seem, been no opportunity for the formulation of a deliberate statement. The supervening circumstances were all the product of the difficulty. Indeed, it may be said that these circumstances were of the difficulty itself. It appears with reasonable certainty that what he then and there said to the witness was instinctive upon the difficulty; the spontaneous givings out of a mind in the thrall and shadow of the mortal assault, and in immediate and strenuous effort to escape further danger still imminent, and not a mere narration of a past transaction. . . . "

We are of the opinion that the aforementioned declaration was a "reflex product of immediate sensual impressions, unaided by retrospective mental action." See Illinois Central R. R. Co. v. Lowery, 184 Ala. 443, 63 So. 952. The declaration was instinctive and spontaneous and not deliberative or retrospective.

## II

■ Appellant further contends that his motion for mistrial (predicated upon the nonresponse of a prospective juror during voir dire) was erroneously denied. On voir dire examination defense counsel examined the venire as follows:

"Has anybody ever been in law enforcement, this would be a policeman or woman or sheriff's department or security department or F.B.I, etc.

"Has anybody ever been in that line of work?

"I don't think I see any hands.

"Are any of you personally acquainted with Mr. Brown, the assistant district attorney in this case who is seated at the table?

"No one has answered that their spouse, their husband, or wife, worked for the sheriff's department or the police department of any of the cities, but I wonder if they used to, if your husband or wife used to in police work or law enforcement work would you please raise your hand?"

Subsequently, after the jury had been empaneled and the trial had begun, a juror told the judge that his *father* had at one time been a circuit solicitor. The juror stated that his father had died when the juror was five or six years old and that he didn't connect it at the time the question was asked. The juror testified that the fact that his father had been a circuit solicitor would not affect the performance of his duties as a juror in this case.

It should be noted that the precise question asked by defense counsel was whether any juror or the *spouse* of any juror had been engaged in law enforcement. No question was asked concerning the juror's parents.

Certainly appellant was entitled on voir dire to examine the venire in regard to a parent's affiliation with law enforcement; however, the record before us shows no such inquiry. Veniremen cannot be expected to reveal information not elicited by the litigants.

The judgment appealed from is therefore due to be and is hereby

Affirmed.

All the Judges concur.