304 So.2d 34

**Charles Franklin JONES**

v.

**STATE.**

**6 Div. 689.**

Court of Criminal Appeals of Alabama.

July 3, 1974.

Rehearing Denied Oct. 1, 1974.

————◆————

J. Wilson Dinsmore, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, Francis A. Poggi, Jr., Sp. Asst. Atty. Gen., Fairhope, for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

Appellant was found guilty by a jury of manslaughter in the first degree, which charge was impliedly included in an indictment for murder in the first degree. In accordance with the verdict of the jury, he was sentenced to ten years imprisonment in the penitentiary.

Briefs on this appeal from the judgment of conviction and sentence present one question only: Whether the trial court committed reversible error in overruling objections of defendant to testimony of a witness as to two statements made by the victim of the alleged homicide, which statements were: "Charles [defendant] why are you doing this to me?" and "Charles [defendant] is mean."

Defendant and the victim were common law husband and wife.

Evidence without conflict was to the effect that on April 7, 1973, while defendant and victim were living at 452 Fifth Place West in the City of Birmingham she was severely burned and died as a result of the burns on May 2, 1973. The burns were second and third degree and involved about three-fourths of the body surface, primarily on the anterior chest and abdomen, the left arm, and around both legs and feet. Upon her arrival at the hospital, she smelled strongly of alcohol.

The State and defendant are in accord in the conclusion based on the evidence that the tragedy was precipitated by the pouring of a part of the contents of a can of flammable liquid upon the wife. Nobody, other than defendant and the victim, witnessed the incident. There was no direct evidence as to what ignited the liquid or fumes thereof.

According to testimony of defendant, there was an argument between him and

692

his wife that started after a telephone conversation between her and her sister; he tried to "calm her down," but he couldn't get her to listen. She went into the bedroom, stating that nobody cared about her and that she had just as soon be dead. They both had had several drinks of liquor. Their drinking included some previous drinking the same afternoon with a man who had left the home of defendant and his wife prior to the incident that eventually caused her death. Defendant's testimony was to the effect that she was strongly under the influence of the liquor, and there is hardly any escape from the conclusion that he was also, although he denied being drunk. He stated that she kept repeating like a "broken record" that nobody cared for her and that she would be better off dead. He said he noted a shotgun shell on top of a chifforobe, assumed that she had had it, and he took it and put it in his pocket. He further said that he then went to a closet to get a shotgun out of the closet, but instead took a can of flammable liquid, which he called paint thinner, took the top off and handed it to her; that she then took the can, turned it up and started pouring it on herself; he snatched the can away from her, but before getting it back from her she had poured enough on her to run "all down in front of her." He placed the can back on the shelf and told his wife to "pull off her clothes and take a bath" and to try to get some sleep and leave him alone. He went on back into the living room; his wife came out "as if she was going to the bathroom," but he didn't look around at her and didn't know if she went in there or not. The next thing he knew she was "burning, calling me and screaming," while he was in the living room, sitting on the sofa. She was running toward the front of the house. He caught her and "wrestled" her on back into the bedroom, attempted to put out the fire by using bedcovers, succeeded in doing so and called the fire department by telephone. He stated that when he handed the can to his wife he stated that "if she wanted to kill herself

to use that, rather than shoot herself with the shotgun."

The Birmingham Fire Department responded promptly to the call, and the victim was sent promptly to the hospital. Sergeant Albert Wallace of the Homicide Division of the Birmingham Police Department testified that the victim stated in his presence, out of the presence of defendant and while she was in the emergency room, "Charles why did you do this to me?" and "Charles is mean." The evidence indicates that the conversation was at 5:10 P.M., and there is evidence to the effect that the fire department received the call to the Jones home at approximately 4:50 P.M.

The trial court passed on the question of the admissibility of the statements of the victim out of the presence of the jury, as was highly appropriate. The witness on voir dire examination testified as to several statements of the victim, but the trial judge made it clear that he was limiting the evidence as to the declarations to the two statements hereinabove quoted. The State was attempting to get the declarations or statements in evidence on the theory that they constituted dying declarations of the victim, but the trial court did not agree that they met the test of the dying declarations rule stating:

"In short, I am not going to admit it as a dying declaration, but I am going to admit it on the theory of res gestae as set forth in this Davis case."

The reference is to Davis v. State, 51 Ala. App. 200, 283 So.2d 650.

Appellant strongly contends in his brief that the Davis case, as well as Nelson v. State, 130 Ala. 83, 30 So. 728, relied upon in Davis, does not support the ruling of the trial court and that the statements do not constitute "startled utterances or spontaneous declarations" or "a part of the res gestae of the difficulty." Appellee is equally insistent that "the declarations of Annie Jean Jones were produced by and instinctive upon the occurrences to which

they relate, rather than a retrospective narration of them." and that the trial court correctly admitted them in evidence under the principles recognized in *Davis* and *Nelson*.

■■ The interval between the burning and the declarations, between fifteen and twenty minutes, according to appellant, or approximately fifteen minutes, according to the State, is longer, it seems, than in any reported case in Alabama in which declarations have been held to have been admissible under the principles of *Davis* and *Nelson*. We fully agree, however, with Judge McElroy in 2 McElroy, The Law of Evidence in Alabama, (2d ed.) § 265.01(2), in connection with his favorable comments on Harrison v. Baker, 260 Ala. 488, 71 So.2d 284, that reasonable discretion should be vested in the trial court in making a determination of whether a particular declaration possesses sufficient spontaneity to authorize its admission in evidence, which would include a "reasonable measure of discretion to admit or exclude a borderline statement" and that:

"No such strict contemporaneity should be required for a declaration made while the declarant was under the nervous excitement produced by a startling occurrence. Indeed, our courts have said that 'Time alone is not a determining criterion' (Domingus v. State, 94 Ala. 9, 11 So. 190) and that 'res gestae cannot be tried by any specified time or number of minutes' between the act and the declaration (L & N RR Co v. Pearson, 97 Ala. 211, 12 So. 176, 178)."

Having the mentioned authorities, as well as others, in mind and the extraordinary circumstances involved in this case, the bizarre startling occurrence and the extreme nervous excitement produced thereby, we have difficulty in concluding that the time interval precludes the declarations from meeting the test of spontaneity or the like as set forth in *Davis* and *Nelson*, as well as by other cases and authorities.

The principles announced in *Davis* and *Nelson,* and relied upon by the trial court, do not, however, furnish authority for admission in evidence of all statements of a victim of a crime that possess the requisites of spontaneity, nervousness excitement and a startling occurrence. In 2 McElroy, The Law of Evidence in Alabama, § 265.01(8) we find:

"The Spontaneous Exclamation Exception does not admit a statement which does not relate directly to the things observed at the time of the startling occurrence, e. g., a 'distinctly separate or prior matter.' Wigmore, sec 1754."

And in Section 265.01(11) is the following:

"A Spontaneous Exclamation in the form of an opinion which the declarant would not be permitted to express were he testifying in court as a witness is inadmissible:

"Shiflett v State, 38 AlaApp 662, 93 So2d 523, cert den 265 Ala 652, 93 So2d 526 (wife-murder; wife's statement that she did not believe husband meant to shoot her, held inadmissible); Benjamin v State, (Ala) [148 Ala. 671] 41 So 739 (murder by cutting deceased; held, trial court erred in admitting evidence that as accused, immediately after cutting deceased, walked away rapidly, the people halloed 'Police! Police! Murder! Murder!'—because 'Murder! Murder!' was but an expression of opinion of accused's guilt); Norwood v State, 11 AlaApp 30, 65 So 851, syl 5."

Although the declaration "Charles, why did you do this to me?" would seem to be of the type of declarations that could be shown in evidence under the principles of *Davis* and *Nelson,* we think that this cannot be said as to the declaration "Charles is mean."

■ Even if the victim had survived and had testified against the defendant in an assault or assault with intent to murder case, she could not have made such a state-

ment. Such testimony would have violated the transcendent principle that the character of a defendant in a criminal case is not subject to attack by the State until the defendant has shown, or attempted to show, good character.

The reason that undergirds the rule is stated in 1 Wigmore, Evidence § 57 (3d ed. 1940) as follows:

"There is just as much probative value in the argument, 'A is quarrelsome, therefore he probably committed this assault', as in the argument, 'A is peaceable, therefore he probably did not commit the assault'; and this is acknowledged in judicial opinion (ante, § 55). Here, however, a doctrine of Auxiliary Policy (ante, § 29a) operates to exclude what is relevant,—the policy of avoiding the uncontrollable and undue prejudice, and possible unjust condemnation, which such evidence might induce: . . . ."

The author further states:

". . . . The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught, is a tendency which cannot fail to operate with any jury, in or out of Court. There are also indirect and more subtle disadvantages [2].

"The rule, then, firmly and universally established in policy and tradition, is that the prosecution may not initially attack the defendant's character."

Included as referable to the last quoted sentence is the following on page 144, 1972 Pocket Supplement to Wigmore, supra:

"*Alabama*: 1959, Garner v. State, 269 Ala. 531, 114 So.2d 385 (murder; prior criminal act, held inadmissible). 1960, White v. State, 40 Ala.App. 613, 119 So. 2d 344 (setting off dynamite near dwelling; cross-examination of defendant as to a rock-throwing incident on a former occasion held inadmissible). 1963, Bedsole v. State, 274 Ala. 603, 150 So.2d 696

(homocide); Merrill, J., 698: 'unless the defendant has first put his character in issue by offering testimony that it was good, it is reversible error to inquire into his reputation for peace and quiet,' citing McElroy's Law of Evidence, Vol. I, 2nd Ed., § 27.02(8), p. 55). 1968, Sorrells v. State, 44 Ala.App. 481, 213 So.2d 687 (follows Bedsole v. State, *supra*.)."

■  It probably should be said also that character, good or bad, is not provable by one's opinion or knowledge as to the character of another, but only, as a general rule, by evidence of general reputation. Stearns v. State, 266 Ala. 295, 96 So.2d 306, Wilcutt v. State, 41 Ala.App. 25, 123 So.2d 193, cert. denied, 271 Ala. 315, 123 So.2d 203.

■  There may be some question as to whether defendant on the trial properly raised the question as to the admissibility of the statement "Charles is mean" standing alone, but the adequacy of defendant's objection to the particular testimony is not raised by the State on appeal. Furthermore, there may be some question as to whether the statement "Charles is mean" was admitted in evidence, in the light of the record showing a departure to some extent by the witness in testifying before the jury from his voir dire examination, and the trial court's calling attention to the fact that there was some variation, but this point is not made by the State on appeal. Its position seems to be epitomized by the following statement "It is the contention of the Appellee that the Trial Court properly admitted the statements made by the deceased, Annie Jean Jones, and that said admission was in complete accordance with the case of Mose Jefferson Davis v. State, [51 Ala.App. 200], 283 So.2d 650. It was the position of the trial court (T65) that what Annie Jean Jones actually said, that is, 'Charles why are you doing this to me?' and 'Charles is mean.' was a part of the res gestae. The statements made by the decedent were not admitted on the theory that they were dying declarations, but rather on

the theory of res gestae as set forth in the *Davis* case (T65)." At any rate it is clear that the defendant did object to testimony as to the statements, the jury heard the testimony as to the statements, the learned trial judge in his diligent and commendable efforts to limit the testimony to the two particular statements definitely ruled that they were admissible. It is our opinion that the ruling of the trial court as applied to the declaration, "Charles is mean," was in error and that the error was substantially harmful to defendant.

For the error discussed, the judgment of the trial court should be reversed and the case remanded for another trial.

The foregoing opinion was prepared by Honorable LEIGH M. CLARK, Supernumerary Circuit Judge, serving as Judge of this Court under Section 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Reversed and remanded.

All the Judges concur.