John Miller was charged with murdering his mother, Lula Miller, by beating her with his hands and fists. Appellant entered a plea of not guilty and not guilty by reason of insanity. The jury found him guilty of the lesser included offense of manslaughter and he was sentenced to ten years' imprisonment. He appeals.
 I
Appellant first contends that statements made by the decedent to witness Crommer naming the appellant as the person who beat her were inadmissible. Mrs. Crommer, after establishing that she lived next door to apartments where the decedent lived, testified that she saw the decedent, Mrs. Lula Miller on November 22, 1981. She testified that Mrs. Miller came to her front door about 6:30 p.m. and knocked on the door. She said that Mrs. Miller's mouth was bleeding, she had bruises all over her face, she had only one shoe on and although it was a cold evening, she had no coat or sweater. Over objection the witness testified that Mrs. Miller asked if she could come in and said, "He's trying to kill me." Mrs. Crommer let her in and Mrs. Miller asked if she might be allowed to stay there. Over objection, the testimony was that Mrs. Miller said, "He's trying to kill me, and he's beat me up." She then asked Mrs. Crommer to not tell anyone that she was there and asked her to just let her stay there for a little while. Mrs. Crommer called a friend and then called the police. Mrs. Miller was rambling, saying that Mrs. Crommer didn't know what she had been through. Mrs. Crommer said, "Well, was it your husband?" Mrs. Miller said no, it was her son. Then she asked if she might be allowed to stay with Mrs. Crommer for a while until she could get in touch with her grandson because she couldn't go back and live with her son. Mrs. Crommer testified that she supplied Mrs. Miller with a blanket and washcloth. Mrs. Crommer called the emergency number and the police and paramedics responded. They asked her if her name was Lula Miller and she said yes. They asked her did John do that and she said yes. It was testified that she consented to go to the hospital and she left on a stretcher in an ambulance.
Appellant argues on appeal that this testimony was offered as a dying declaration; he contends that no proper predicate was laid for its admissibility as a dying declaration. We take a different view. We consider that the events and statements testified to by Mrs. Crommer were incident to the beating itself and shed light on the main fact. The evidence was admissible as part of the res gestae. In Williams v. State,291 Ala. 213, 279 So.2d 478 (1973), a neighbor asked a mortally wounded person "Who done it?" and the reply was "Eunice done it." This was held to be part of the res gestae. In Smoot v.State, 381 So.2d 668 (Ala.Cr.App. 1980), two witnesses reached a victim lying in a field and he told them, "The Smoot boy" was the person who "did this to me." This was held admissible as part of the res gestae.
Other similar factual situations in which there was a statement incriminating the accused occurring after the event may be found in West's Alabama Digest, Criminal Law, Key 366 (4). The principle involved is set out in Nelson v. State,130 Ala. 83, 30 So. 728 (1901). The question was whether certain statements by the victim were a part of the res gestae and the court said:
 "And this depends upon whether the circumstances are such as that it may with reasonable certainty be affirmed that the declarations were produced by and instinctive upon the occurrences to which they relate rather than a retrospective narration of them. If they are the ebullition of a state of mind engendered by what happened and not a mere statement of the facts as held in memory of a past transaction — if they were made so soon after the difficulty as that, under the particular circumstances transpiring between the difficulty and the declarations, it is reasonably clear that they sprang out of the transaction and stand in relation of unpremeditated result thereto, the idea of deliberate design in making them being *Page 802 
fairly precluded and tend to elucidate the difficulty — they are to be regarded as contemporaneous with the main transaction and as part of it within the rule as to res gestae."
We find that the decedent was fleeing from her attacker and was seeking to conceal herself so as to prevent a continuation of the beating which proved fatal. We are satisfied that her statements were "the spontaneous givings out of a mind in the thrall and shadow of the mortal assault, . . ." and were "not a mere narration of a past transaction." Nelson, id. Thus, the testimony was properly admitted.
 II
Appellant further contends that the court erred by refusing a charge on involuntary intoxication. § 13A-3-2 (c), Code of Alabama 1975, deals with involuntary intoxication and says:
 "(c) Involuntary intoxication is a defense to prosecution if as a result the actor lacks capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."
It further defines voluntary intoxication in (e)(2):
 "`Voluntary intoxication' means intoxication caused by substances that the actor knowingly introduced into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them under circumstances that would afford a defense to a charge of crime."
The commentary to this code section correctly states that involuntary intoxication is intoxication resulting from force, fraud or artifice.
The evidence was that the appellant had twice been treated in hospitals for alcoholism. The appellant apparently contends that chronic alcoholism causes one to be "involuntarily intoxicated." Such is not the law. The trial court did not err in refusing a requested charge on involuntary intoxication.
 III
Appellant contends that the state was guilty of prosecutorial misconduct by asking questions which implied the existence of a factual predicate which was not supported by the evidence. The prosecutor in cross examining the nephew of the accused proceeded as follows:
"Q: Did you know he has had two wives?
"A.: Yes, sir.
"Q: Did he have a pattern of beating those wives?"
Objection was made and a mistrial sought. The motion for mistrial was denied. The state's attorney argued in the presence of the jury that he had the right to seek to establish a pattern, plan, motive or design by such questions. The court cautioned the state's attorney that a proper predicate had to be laid for such a question and the court noted that "— there was a conclusion within the question, whether or not he knows of his treatment of his prior wives and whether that treatment was good or bad, I think the Court would allow that."
The prosecutor then proceeded, "Do you know of his treatment of his prior wives, Sammy?" The answer, in effect, was no. And the prosecutor said: "He has gone into it. Let me ask you this, did you know about John jumping on his mother for her not turning over her Social Security check so he could buy whiskey?" Again, there was an objection and a motion for mistrial. The motion for mistrial was denied, but the court stated:
 ". . . but, please, again, let me caution about asking questions which, in essence, are saying a question such as have you stopped beating your wife that, perhaps, contain an answer within the question itself or a statement which has not been established in fact. Now, as to what treatment he knows of, prior conduct, and whether or not he knows on what that conduct was based, I certainly will allow those questions." *Page 803 
These facts place this court in the same situation as was the court in Young v. State, 363 So.2d 1007 (Ala.Cr.App. 1978), which stated:
 "We now come to the most serious question presented by this record. Is it unprofessional conduct for a prosecuting attorney to ask questions on cross-examination of the defendant which imply the existence of a factual predicate which the examiner knows he cannot support by evidence? As said by Judge Harris, Presiding Judge of this Court, in the case of Bezotte v. State, Ala.Cr.App., 358 So.2d 521, at page 525:
 `We find in the American Bar Association Standards for Criminal Justice the following statement concerning the function of the prosecution. "It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by evidence." Similarly, Alabama law states that, while the prosecuting attorney is under a duty to prosecute the case with vigor and earnestness, he should not take unfair advantage of the defendant. Arant v. State, 232 Ala. 275, 167 So. 540.
 Even though a prior conviction involving moral turpitude may be shown upon the cross-examination of a witness, this examination should be subject to the limitation that it be conducted in good faith. See 3 A.L.R.3d 965, and the cases cited therein, concerning lack of documentary proof of a prior felony conviction.'
 In the case of McGovern v. State, 44 Ala. App. 197, 205 So.2d 247, 250, Judge Johnson declared that:
 `The State owed appellant that diligence necessary to establish properly a predicate and to clarify whether or not his alleged conviction involved moral turpitude, outside of the hearing of the jury, so as to not prejudice appellant in the eyes of the jury.'
 We have reviewed the entire record in this case, including all of the oral charge to the jury and hold that, under the facts shown in the record in this case, the appellant was denied a fair trial due to the improper conduct of the prosecuting attorney in asking questions which implied the existence of factual predicates which the examiner knew he could not support by evidence, and that the court erred in overruling appellant's motion for a mistrial. Jones v. State, 21 Ala. App. 505, 109 So. 564; Bezotte v. State, supra; McGovern v. State, supra; American Bar Association Standards For Criminal Justice, Prosecution Function Examination Of Witnesses, Sec. 5.7 (d); Code of Alabama, 1975, Sec. 12-21-162; Birmingham Baptist Hospital, Inc. v. Blackwell, 221 Ala. 225, 128 So. 389; Gregath v. Bates, Ala.Civ.App., 359 So.2d 404; Moore v. State, 30 Ala. App. 552, 9 So.2d 146; People v. Perez, 58 Cal.2d 229, 23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946; Wolffe v. Minnis, 74 Ala. 386; Blue v. State, 246 Ala. 73, 19 So.2d 11; Madison v. State, 55 Ala. App. 634, 318 So.2d 329; certiorari denied, 294 Ala. 764, 318 So.2d 337."
In reversing a conviction in Terrell v. State, 397 So.2d 232
(Ala.Cr.App. 1981), Judge Bookout stated as regards this issue:
 "A universally recognized rule of law is that it is impossible to introduce evidence of distinct and independent offenses not charged in the indictment on which an accused is being tried. Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947); Racine v. State, 290 Ala. 225, 275 So.2d 655 (1973); Horton v. State, 41 Ala. App. 16, 122 So.2d 920, cert. denied, 271 Ala. 699, 122 So.2d 923 (1966); Headley v. State, 51 Ala. App. 148, 283 So.2d 458 (1973); Anderson v. State, Ala.Cr.App., 354 So.2d 1156, cert. denied, Ala., 354 So.2d 1161 (1977); Tillman v. State, Ala.Cr.App., 374 So.2d 922, cert. quashed, Ala., 374 So.2d 926 (1978); Gamble, McElroy's Alabama Evidence, (3d ed. 1977), § 69.01 (1), et seq.
 "The Alabama Supreme Court gave a comprehensive discussion of the rule against use of evidence of prior collateral crimes or misconduct in Hinton v. State, 280 Ala. 48, 189 So.2d 849 (1966), and in Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953). Throughout the cases on this *Page 804 
point of law, relevancy is the key factor in determining whether collateral misconduct of a defendant is admissible in evidence.
 "Evidence which tends to show the commission of a collateral crime or wrongful act not charged in the indictment is inadmissible in order `to prevent conviction based on a jury belief that the accused is a person of bad character. The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged.' United States v. Turquitt, 557 F.2d 464, at 468 (5th Cir. 1977).
 "In Johnson v. State, 38 Ala. App. 82, 76 So.2d 351
(1954), it was held to be reversible error on a charge of obtaining property by false pretense to admit into evidence, over objection, that the appellant had given the same bank in question a false financial statement previous to the transaction for which he was being tried.
 "In McMickens v. State, 16 Ala. App. 78, 75 So. 626
(1917), in a prosecution for larceny of scrap brass, which the defendant sold to a scrap yard, it was held to be error to show other sales of wire and brass by the defendant to the same dealer at various times during the year. Likewise, in Gibson v. State, 14 Ala. App. 111, 72 So. 210 (1916), in a prosecution for sale of illegal liquor, it was held to be error to allow a witness to testify to having seen large quantities of whiskey stored in the back room of the defendant's store some time prior to the sale in question. Since the charge was for selling, the evidence of illegal possession, another similar crime, was held to be irrelevant. The court there stated:
 "`It is the established rule that when irrelevant or improper testimony is admitted on a criminal trial, against the objection of the defendant, it will work a reversal unless it affirmatively appear that the effect was to the benefit of, or not injurious to, the defendant . . .'
 "In a much earlier case, the use of evidence of irrelevant but suspicious acts met with the same result. In a prosecution for receiving stolen cotton, the Alabama Supreme Court held it to be error to allow testimony that, during the week previous to discovery of the stolen cotton in the defendant's storehouse, persons were seen going into that storehouse just before and about daybreak `with sacks of cotton, and coming out with the sacks empty.' Gassenheimer v. State, 52 Ala. 313 (1875).
 "The rare exceptions to the rule against use of evidence of other offenses `may be summarized as knowledge, intent, plan or design, motive, identity and inseparable crimes.' Mason, supra. None of those exceptions exist in the instant case."
The trial court could not have anticipated such questions but recognized their highly prejudicial nature. We find that neither the admonition to the State's attorney nor the curative instruction overcame the prejudice as referred to in the cases cited above. We suggest that at the retrial of this case, which we hereby require, the court might consider an order to counsel requiring a hearing out of the presence of the jury before any reference is made to any distinct and independent offenses not charged in the indictment.
REVERSED AND REMANDED.
All the Judges concur.