MURDOCK, Justice.
 

 Rebecca Jean Henriksen, the plaintiff below, appeals from a judgment entered on a jury verdict in favor of the estate of Dr. Charles Glenn Roth and the professional corporation Charles Glenn Roth, D.M.D., P.C. (“the Roth defendants”), in an action asserting claims under the Alabama Medical Liability Act in relation to a dental procedure Dr. Roth performed on Henriksen. Henriksen contests rulings by the trial court on judicial estoppel and rulings in which the trial court accepted a jury charge requested by the Roth defendants and rejected a jury charge requested by Henriksen. We affirm.
 

 7.
 
 Facts and Procedural History
 

 Henriksen began seeing Dr. Roth
 
 [1]
 
 as her dentist in May 1992, and, except for 1996, maintained regular appointments with him every year until 2000. Henrik-sen testified that she had not been aware of any injuries sustained by Dr. Roth during that period and that she never noticed him laboring under any pain or impairment of his faculties when he attended to her. On August 23, 2000, Henriksen went to see Dr. Roth about a particular tooth that was giving her trouble. He recement-ed a temporary bridge he had originally installed in 1998 and advised Henriksen that a root canal would be necessary. On Thursday, August 24, 2000, Dr. Roth performed the root canal on Henriksen’s tooth. Henriksen experienced discomfort in the area over the following weekend, and on Sunday, August 27, 2000, she telephoned Dr. Roth to inform him of the pain. He advised her to come into his office the following morning so he could evaluate the situation.
 

 The next day, August 28, 2000, Henrik-sen came in for her scheduled appointment; she was accompanied by Mr. Hen-riksen. According to Henriksen, Dr. Roth told Mr. Henriksen that everything would be fine, so he left her at Dr. Roth’s office. Henriksen testified that Dr. Roth told her that He would look at the area, and he placed her under nitrous-oxide sedation. Dr. Roth then performed either an api-coectomy or a boney trephination.
 

 Henriksen’s dental expert, Martha Wallace, testified that in her opinion the surgery Dr. Roth performed on Henriksen was an apicoectomy, which is the removal of the root tip of an abscessed tooth and the surrounding infected tissue. Dr. Roth’s dental expert, Gerard Weinacker, testified that in his opinion Dr. Roth performed a boney trephination, which involves creating an opening by puncturing the soft tissue and the cortical bone overlaying the apex of the root tip of the tooth in order to allow drainage to prevent infection inside the jawbone. The important distinction between the two, for purposes of this case, is that a boney trephination is an emergency procedure because the oral infection is potentially fatal, while an api-coectomy is not considered an emergency surgery.
 

 Henriksen testified that Dr. Roth did not tell either her or Mr. Henriksen that he was going to perform a surgical procedure, and she claimed he did not obtain consent from either of them to do so. She
 
 *655
 
 testified that the next thing she remembered after being placed in the dentist chair and being administered nitrous oxide was her husband coming back to the dental office late in the day to take her home.
 

 Henriksen testified that several days later she began to experience severe pain, numbness, and tingling on the right side of her face, the side on which the surgery had been performed. Henriksen returned to Dr. Roth for a follow-up visit during which he related to her that the pain and numbness were temporary and that the area was “healing well.” Henriksen claims, however, that the pain and numbness did not subside and that she sustained permanent nerve damage to the right side of her face. Her treating physician for the pain, Dr. Lee Irvin, testified by deposition that in his opinion there was “a reasonable degree of medical probability” that the surgery performed by Dr. Roth caused Henriksen’s medical problem.
 
 [2]
 

 Henriksen sued Dr. Roth and his professional corporation on August 23, 2002, alleging negligence and wantonness regarding the August 28, 2000, surgery. Dr. Roth subsequently became ill and died on June 5, 2004,
 
 [3]
 
 of complications related to HIV/AIDS. Henriksen subsequently amended her complaint to substitute Dr. Roth’s estate as a defendant and to add claims related to Dr. Roth’s contraction of HIV/AIDS, claims the trial court later dismissed on summary judgment. Ultimately, Henriksen argued at trial that Dr. Roth had breached the standard of care applicable to practitioners of general dentistry under the Alabama Medical Liability Act in three ways: (1) he failed to refer her to a specialist for the surgery; (2) he failed to provide Henriksen with material information concerning the risks of the surgery, specifically the risk of possible nerve damage and thus failed to obtain informed consent for the surgery; and (3) he failed to disclose his medical situation to her.
 

 Before the trial, Henriksen filed a motion invoking the doctrine of judicial estop-pel, arguing that the Roth defendants should be estopped from contending that Dr. Roth was not disabled when he performed the surgery. The motion was based on injuries sustained by Dr. Roth before Henriksen’s surgery and litigation Dr. Roth had engaged in against his insurance company regarding those injuries. Specifically, in February and March 1995, Dr. Roth was involved in two accidents that resulted in injuries to his neck. At that time, Dr. Roth had been working full-time as a dentist for 10 years, but the injuries forced him to start working part-time (80-40 hours per week). Dr. Roth received pain-management treatment from March 1995 to August 1998 for the injuries, but his condition worsened.
 

 On September 21, 1998, Dr. Roth applied for disability benefits under his employment-insurance policy with Provident Life Insurance Company (“Provident”). In the letter applying for the benefits, Dr. Roth explained his injuries and the fact that he was working only part-time and that he believed his condition met the “policy definition of total and/or residual disability.”
 
 [4]
 
 On an accompanying form, Dr.
 
 *656
 
 Roth described the limitations on his practice caused by his injuries:
 

 “Because of the pain resulting from my injury, I am unable to sit in the positions required to perform dental procedures for any extended period of time. Bending and craning of the head and neck to visualize the operative field causes pain, the positions which the arms must be held in to perform these procedures exacerbates the numbness/neurological deficit in my hand, and the chronic pain has destroyed my ability to handle other aspects of the practice, including practice-building, oversight and management of the personnel. Even my ability to handle simple things like diagnosis and treatment planning are compromised by my narrowed ability to concentrate.”
 

 In support of Dr. Roth’s disability claim, one of his treating physicians, Dr. John McAndrew III, filed a statement in which he stated that he had advised Dr. Roth “not to practice general dentistry any longer.”
 
 [5]
 

 Provident denied Dr. Roth’s disability claim in February 1999, contending that Dr. Roth’s disability was the result of a pre-existing condition. Subsequently, Dr. Roth sued Provident for allegedly improperly denying his disability claim. In the complaint, Dr. Roth alleged that he filed the disability claim because, as of September 1998, he “was no longer able to perform the substantial and material duties of his occupation.”
 
 In his deposition for that case, however, Dr. Roth testified that he continued to perform all of his dental duties after the accidents as he had done before the accidents, albeit on a part-time basis, with the exception that he no longer perfonned total-mouth reconstructions because of the length of those procedures.
 
 Dr. Roth and Provident entered into a confidential settlement in December 2004 that ended the litigation, but the settlement agreement stated that the settlement did not constitute an admission of liability by Provident. The trial court denied Hen-riksen’s motion invoking the doctrine of judicial estoppel.
 

 At the close of the evidence, the parties submitted various requested jury charges. One of Henriksen’s requested jury charges concerned Dr. Roth’s failure to obtain consent for the surgery. Henriksen’s requested jury charge provided:
 

 “Plaintiff, Rebecca Henriksen, alleges that Glenn Roth, DMD, performed a surgical procedure on Plaintiff to which she did not consent. A medical procedure performed without the consent of a patient constitutes an assault and battery or a trespass to the person. If you find that Rebecca Henriksen did not consent to the August 28, 2000 procedure performed by Glenn Roth, DMD, then Glenn Roth, DMD, is liable for all damages proximately caused by the performance of the procedure or procedures to which Rebecca Henriksen did not consent.”
 

 The trial court rejected Henrikseris requested jury charge on the ground that the requested charge was “virtually sub
 
 *657
 
 sumed” by the lack-of-consent charge the trial court did read to the jury. The lack-of-consent charge the trial court gave to the jury provided:
 

 “A doctor may not treat a patient ■without the consent or permission of the patient. When the patient is unable to give permission, a doctor must obtain permission from someone authorized to give it for the patient.”
 

 In addition, Henriksen objected to a jury charge requested by the Roth defendants concerning emergency medical treatment. The requested jury charge on emergency medical treatment provided:
 

 “When an emergency requires immediate treatment, a doctor is not required to get permission to treat the patient if it is impossible or impractical to get permission and a delay would cause harm to the patient’s life or health.
 

 ‘When a doctor finds medical conditions that could not reasonably have been known before the treatment, and it is impossible or impractical to obtain permission, a doctor is not required to get permission to give additional or different treatment if a delay would cause harm to the patient’s life or health.”
 

 The trial court gave the Roth defendants’ requested jury charge over Henriksen’s objection.
 

 The jury returned a verdict in favor of the Roth defendants on all claims. Hen-riksen appeals from the judgment entered on that verdict, taking issue with the trial court’s denial of Henriksen’s judicial-estop-pel motion, the trial court’s refusal to give Henriksen’s requested instruction on lack of consent, and the trial court’s refusal to sustain Henriksen’s objection to the Roth defendants’ requested jury instruction on emergency medical treatment.
 

 II. Standard of Review
 

 Henriksen urges this Court to apply a
 
 de novo
 
 standard of review regarding the trial court’s refusal to grant her judicial-estoppel motion, arguing that the issue is purely a question of law. The Roth defendants urge this Court to employ an abuse-of-discretion standard of review, noting that Alabama law provides trial courts with considerable discretion concerning equitable remedies and observing that the United States Court of Appeals for the Eleventh Circuit reviews such rulings applying that same standard.
 
 See Transamerica Leasing, Inc. v. Institute of London Underwriters,
 
 430 F.3d 1326, 1331 (11th Cir.2005).
 

 This Court has not determined what standard of review ordinarily applies to a trial court’s decision on an issue involving judicial estoppel. This Court need not decide the issue in this case, however, because the result is the same regardless of the standard applied.
 

 As to the issues raised regarding jury charges,
 

 “a party is entitled to have its case tried to a jury that is given the appropriate standard by which to reach its decision, and a wrongful refusal of a requested jury charge constitutes a ground for a new trial. See
 
 C.I.T. Financial Services, Inc. v. Bowler,
 
 537 So.2d 4 (Ala.1988). An incorrect, misleading, erroneous, or prejudicial charge may form the basis for granting a new trial. See
 
 Nunn v. Whitworth,
 
 545 So.2d 766 (Ala.1989).”
 

 Shoals Ford, Inc. v. Clardy,
 
 588 So.2d 879, 883 (Ala.1991). Moreover, this Court “must look to the total effect of the entire charge to see if there is reversible error.”
 
 Taylor v. Owen,
 
 294 Ala. 543, 546, 319 So.2d 672, 674 (1975).
 

 
 *658
 

 III. Discussion and Analysis
 

 A. Judicial Estoppel
 

 Henriksen contends that the trial court erred in denying her motion and allowing the Roth defendants to take the position at trial that Dr. Roth was not disabled at the time he performed the surgery on her. She argues that Dr. Roth’s position in his action against Provident is clearly inconsistent with his position in this case and that, under the doctrine of judicial estoppel, the Roth defendants should have been prevented from taking that inconsistent position.
 

 Henriksen is correct that the doctrine of judicial estoppel “ ‘ “applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted.” ’ ”
 
 Ex parte First Alabama Bank,
 
 883 So.2d 1236, 1241 (Ala.2003) (quoting
 
 Jinright v. Paulk,
 
 758 So.2d 553, 555 (Ala.2000), quoting in turn
 
 Selma Foundry & Supply Co. v. Peoples Bank & Trust Co.,
 
 598 So.2d 844, 846 (Ala.1992)).
 

 “The purpose of judicial estoppel is ‘ “to protect the integrity of the judicial process” by “prohibiting parties from deliberately changing positions according to the exigencies of the moment.” ’
 
 New Hampshire v. Maine,
 
 532 U.S. 742, 749-50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting
 
 Edwards v. Aetna Life Ins. Co.,
 
 690 F.2d 595, 598 (6th Cir.1982), and
 
 United States v. McCaskey,
 
 9 F.3d 368, 378 (5th Cir.1993)).”
 

 Middleton,
 
 979 So.2d at 59.
 

 “In
 
 Ex parte First Alabama Bank,
 
 [883 So.2d 1236 (Ala.2003),] this Court ‘embrace[d] the factors set forth in
 
 New Hampshire v. Maine
 
 [, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001),] and join[ed] the mainstream of jurisprudence in dealing with the doctrine of judicial estoppel.’ ”
 
 Middleton,
 
 979 So.2d at 60 (quoting
 
 Ex parte First Alabama Bank,
 
 883 So.2d at 1246). For the doctrine of judicial estoppel to apply (1) “a party’s later position must be ‘clearly inconsistent’ with its earlier position”; (2) “the party [must have] succeeded in persuading a court to accept that party’s earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create ‘the perception that either the first or the second court was misled’ and (3) the party seeking to assert an inconsistent position must “derive an unfair advantage or impose an unfair detriment on the opposing party if not es-topped.”
 
 New Hampshire,
 
 532 U.S. at 750-51, 121 S.Ct. 1808 (citations omitted).
 
 See Middleton,
 
 979 So.2d at 60-61;
 
 Ex parte First Alabama Bank,
 
 883 So.2d at 1244-45.
 

 Henriksen contends that Dr. Roth’s position in his case against Provident that he was “totally disabled” is “clearly inconsistent” with the Roth defendants’ position in this case, i.e., that Dr. Roth was capable of performing the work he performed on Henriksen. Qualifying for disability benefits under an insurance policy, however, is not necessarily the same thing as actually being incapable of performing some work obligations. As noted, Dr. Roth testified in his case against Provident that he was still performing, albeit on a part-time basis, all the tasks and operations as a dentist that he had performed before his injuries, with the exception of full-mouth reconstructions. One doctor recommended in 1998 that Dr. Roth should find another profession, but Dr. Roth clearly chose to continue his practice even as his action against Provident moved forward and after the case ended by way of settlement. Thus, the fact that the Roth defendants contended that Dr. Roth was not totally disabled when he performed the surgery on Hen-riksen is not “clearly inconsistent” with
 
 *659
 
 Dr. Roth’s position in the prior action against Provident.
 

 Henriksen also contends that Dr. Roth was successful in his action against Provident because that action ended in a settlement. Because of the confidential nature of the settlement agreement, however, we do not know to what extent Dr. Roth may have been “successful” in the prior litigation. Moreover, this Court has not determined whether a settlement constitutes “success” for purposes of judicial estoppel. In
 
 Transamerica Leasing, Inc. v. Institute of London Underwriters,
 
 supra, the Eleventh Circuit Court of Appeals labeled this question “a difficult question” that has “divided the [federal] circuits.” 430 F.3d at 1336 n. 8.
 
 [6]
 
 Deciding this question is not necessary here, however, because even if the settlement constituted “judicial acceptance” of Dr. Roth’s previous position, as already discussed, that position is not “clearly inconsistent” with the position the Roth defendants took in the present ease. As a result, there is no perception that either the court in the first action or the court in the second action was misled.
 

 Finally, Henriksen argues that the Roth defendants’ position taken here, which Henriksen alleges is inconsistent with Dr. Roth’s position in his earlier action, gave them an “unfair advantage” because, she says, they were “allowed to present the confusing and sympathy-laden argument that Dr.- Roth was not disabled, just in pain.” Henriksen’s reply brief at 9. It is unclear how the argument that Dr. Roth was not disabled at the time of the surgery offered the Roth defendants an advantage, however, given Henriksen’s arguments at trial. Henriksen argued that Dr. Roth breached the standard of care by failing to inform her of his mental and physical condition, not that he breached the standard of care in his technical performance of the surgery. Thus, Dr. Roth’s disability — or lack thereof — went only to the issue whether it was improper for him as .a dentist not to reveal a disability to a patient. Even if the Roth defendants had been judicially estopped from arguing that Dr. Roth was not disabled at the time of the surgery, Henriksen still had to demonstrate that the standard of care required Dr. Roth to reveal any disability to Hen-riksen.
 

 Moreover, the trial court allowed Hen-riksen to present all of her evidence related to Dr. Roth’s condition. It let the jury weigh that evidence against the facts that Dr. Roth performed the surgery and that Henriksen was not disputing his performance. Given that the Roth defendants’
 
 *660
 
 position was not “clearly inconsistent” with the position Dr. Roth had taken in his case against Provident and that the Roth defendants could not gain an unfair advantage through their position, the trial court chose to err on the side of letting the jury settle the disputed facts over Dr. Roth’s condition. We cannot say that Henriksen was unfairly prejudiced by the trial court’s decision in this regard.
 

 Based on the foregoing, we conclude that the doctrine of judicial estoppel did not prevent the Roth defendants from taking the position at trial that Dr. Roth was not disabled at the time he performed the surgery on Henriksen.
 

 B. Henriksen’s Objections to Requested Jury Charges
 

 The Roth defendants contend that Hen-riksen failed to properly object to the trial court’s rulings regarding the giving and receiving of requested jury charges and, thus, that she did not preserve these issues for appeal. Rule 51, Ala. R. Civ. P., provides, in part:
 

 “No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless that party objects thereto before the jury retires to consider its verdict, stating the matter objected to
 
 and the grounds of the objection.”
 

 (Emphasis added.) The Roth defendants contend that Henriksen failed to state the grounds of her objections with regard to the requested jury charges.
 

 During the pre-charge conference, Hen-riksen’s counsel apparently made specific objections to the trial court’s refusal to read Henriksen’s requested jury charge on lack of consent and the trial court’s giving of the Roth defendants’ instruction on emergency medical treatment. The pre-charge conference was not, however, on the record. During the trial, Henriksen’s counsel objected as follows:
 

 “THE COURT: .... Exceptions from [Henriksen]?
 

 “MR. FILLINGIM: Two, Your Honor, The reading of [the Roth defendants’] jury charge number 17 on emergency. “THE COURT: Yeah, yeah. I note your exception.
 

 “MR. FILLINGIM: And the failure to read [Henriksen’s] jury charge 33 on lack of consent.
 

 “THE COURT: Okay. As we discussed, probably off the record, I — I note your exception. I’ve already articulated my reason for not giving the absence of consent. I think that its virtually subsumed in this case by the lack of consent charge I gave. I think it really would be confusing and unnecessary, but I note your exception.”
 

 In
 
 McElmurry v. Uniroyal, Inc.,
 
 531 So.2d 859, 859-60 (Ala.1988), this Court stated:
 

 “To be timely, an objection to the trial court’s oral charge must be made at the close of the court’s initial instructions to the jury, and it must be stated with sufficient clarity or specificity to preserve the error^ — -in other words, an exception designating only the subject treated by the court in its oral charge is insufficient.... Although Rule 51 [, Ala. R. Civ. P.,] does not contemplate that the objecting party, in order to preserve for appellate review an erroneous instruction, deliver a discourse on the applicable law of the case, he must adequately state specific grounds for his objection....
 

 “Because the only objection raised by McElmurry to the trial court’s jury instructions, both oral and written, referred to earlier objections made during
 
 *661
 
 the pre-charge conference, and because the record is devoid of any specific objection to the charge regarding punitive damages, the only issue raised on appeal, there is nothing for this Court to review. Rule 51, Ala. R. Civ. P., expressly requires that a party state the grounds for his objection; the failure to do so prevents appellate review of the alleged error.”
 

 (Citations omitted.) Furthermore, “[i]n order to comply with the policy behind Rule 51, a party should leave nothing at large in objecting to the court’s oral charge. The objection must be definite.”
 
 Coleman v. Taber,
 
 572 So.2d 399, 402 (Ala.1990).
 

 Henriksen did not provide specific objections on the record regarding the requested jury charges. Concerning the charge on emergency medical treatment, there is nothing in the trial transcript elucidating why Henriksen objected to the charge. Accordingly, the objection was not specific enough to preserve any alleged error for review on appeal.
 

 Whether Henriksen’s objection to the trial court’s refusal to give her requested instruction on lack of consent was sufficient to preserve that objection for appeal is not as clear. “The purpose of stating grounds for objections is to give the trial court an adequate opportunity to correct the instructions and to avoid the waste of time and money from reversals that result from oversight, technical omissions, or remedial mistakes.”
 
 American Cast Iron Pipe Co. v. Williams,
 
 591 So.2d 854, 856 (Ala.1991). It can be argued based on the colloquy described above that the trial court was aware of Henriksen’s specific reasons for objecting to the lack-of-consent instruction given by the trial court and why it was necessary for the trial court instead to give the instruction proposed by Henriksen. On the other hand, the absence of that objection in the record on appeal makes it difficult, if not impossible, for this Court to assess the extent to which the argument now made by Henriksen on appeal on this issue is the same as the argument Henriksen, and perhaps the trial court, had in mind at trial. Ultimately it is unnecessary to resolve this issue because, even if we knew that the argument now made on appeal was the same as the one made before the trial court, we find that argument to be unpersuasive.
 

 The trial court gave an instruction on lack of consent. When that instruction is compared to Henriksen’s requested charge, both unequivocally state that a doctor may not treat a patient without the patient’s consent. The major difference between the instruction given and the requested instruction is that Henriksen’s instruction states that “[a] medical procedure performed without the consent of a patient constitutes an assault and battery or trespass to the person.”
 
 [7]
 

 It is true that “[i]n
 
 Donald v. Swann,
 
 24 Ala.App. 463, 137 So. 178 (1931), the Court of Appeals held that a medical procedure performed without the consent of a patient constituted an assault and battery or a trespass to the person.”
 
 Cain v. Howorth,
 
 877 So.2d 566, 580 (Ala.2003). This Court has since recognized that claims of so-called “medical battery” based on a lack of consent have been subsumed by the Alabama Medical Liability Act, § 6-5-540
 
 et seq.,
 
 Ala.Code 1975.
 
 See Black v. Comer,
 
 920 So.2d 1083, 1093 (Ala.2005). The present case was tried under the Alabama
 
 *662
 
 Medical Liability Act, testing whether Dr. Roth met the standard of care for the practice of general dentistry as to certain of his actions toward Henriksen on August 28, 2000.
 

 At a minimum, as the trial court concluded, giving the requested instruction would have been “confusing and unnecessary.” Henriksen never pleaded or mentioned at trial a cause of action for assault, battery, or trespass to the person. “[E]ach party is entitled to have proper instruction given the jury regarding the issues presented in the case.”
 
 American Cast Iron Pipe Co. v. Williams,
 
 591 So.2d at 856. It obviously follows that if an issue has not been presented, the jury should not be instructed about it.
 
 See
 
 75A Am. Jur.2d
 
 Trial
 
 § 991 (2007) (noting that “[t]he instructions given by the trial court should be confined to the issues raised by the pleadings in the case at bar and the facts developed by the evidence in support of those issues or admitted at the bar”).
 

 In sum, the trial court’s instruction was a correct statement of law, and, looking at the instructions as a whole, we conclude that its “oral instruction was sufficient to cover the issues presented to the jury by the pleadings.”
 
 Meyer v. Wal-Mart Stores, Inc.,
 
 813 So.2d 832, 840-41 (Ala.2001). Accordingly, there was no reversible error in the trial court’s refusal to give Henriksen’s requested instruction.
 
 See, e.g., Sewell v. Internal Med. & Endocrine Assocs., P.C.,
 
 600 So.2d 242, 244 (Ala.1992) (citing
 
 McLemore v. Alabama Power Co.,
 
 289 Ala. 643, 270 So.2d 657 (1972), and
 
 Alabama Power Co. v. Tatum,
 
 293 Ala. 500, 306 So.2d 251 (1975)).
 

 TV. Conclusion
 

 Based on the foregoing, we see no ground for reversal of the trial court’s judgment. We therefore affirm the judgment.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
 

 [1]
 

 . Dr. Roth died during the pendency of the proceedings in the present case. Dr. Roth's estate was substituted as a party.
 
 See
 
 Rule 25(a), Ala. R. Civ. P.
 

 [2]
 

 . Dr. Roth presented expert testimony and evidence disputing both the cause and the permanence of Henriksen’s condition.
 

 [3]
 

 . Dr. Roth died before his deposition could be taken in the present case.
 

 [4]
 

 .The Roth defendants contend that the letter and other evidence reflect that Dr. Roth requested residual disability benefits from the date of the second accident forward and total-disability benefits from September 3, 1998, through September 21, 1998, a period during which Dr. Roth had to stop working com
 
 *656
 
 pletely because of the pain caused by his injuries. Henriksen contends that the Ietter and other evidence indicates that Dr. Roth was requesting total-disability benefits from the date he sustained his second injury to the date of the letter.
 

 [5]
 

 . In the present case Dr. McAndrew testified, in reference to Dr. Roth's condition at that time, that he (Dr. McAndrew) did not feel he had “worked [Dr. Roth] up vocationally enough to make a hard determination” that Dr. Roth was truly unable to practice dentistry any longer. In fact, Dr. McAndrew testified that Dr. Roth maintained his practice on a part-time basis by working less and taking frequent breaks during each day.
 

 [6]
 

 . The Eleventh Circuit Court of Appeals went on to summarize the current federal caselaw on the subject:
 

 "Some courts have held that judicial estop-pel does not apply when the prior position was asserted in a case that resulted in settlement.
 
 See In re Bankvest Capital Corp.,
 
 375 F.3d 51, 60-61 (1st Cir.2004) (refusing to apply judicial estoppel where prior proceeding ended in settlement);
 
 Blanton v. Inco Alloys Int'l, Inc.,
 
 108 F.3d 104, 109-10 (6th Cir.),
 
 supplemented by,
 
 123 F.3d 916 (6th Cir.1997) (noting that judicial estoppel should be applied only to positions a party successfully maintained in a prior suit, and that a setdement results in 'successful' positions for neither side);
 
 Bates v. Long Island R.R. Co.,
 
 997 F.2d 1028, 1038 (2d Cir.1993) (noting that because a settlement neither requires nor implies judicial endorsement of a particular argument, a position taken in a case that settles cannot give rise to judicial estoppel). Not all courts share this view.
 
 See Commonwealth Ins. Co. v. Titan Tire Corp.,
 
 398 F.3d 879, 887 (7th Cir.2004) (noting that judicial estoppel can apply when the prior dispute resulted in settlement);
 
 Rissetto v. Plumbers Local 343,
 
 94 F.3d 597, 604-05 (9th Cir.1996) (noting that a favorable settlement is the equivalent of winning a judgment for the purposes of judicial estoppel)."
 

 Transamerica Leasing, Inc.,
 
 430 F.3d at 1336 n. 8.
 

 [7]
 

 . Henriksen’s requested instruction does not track the language of any instruction provided in the Alabama Pattern Jury Instructions.