STUART, Justice.
Rebecca B. McDonald (“McDonald”), as administrator of the estate of Jeremy Wayne McDonald (“Jeremy”), her deceased son, sued Kubota Manufacturing of America Corporation (“KMA”), Kubota Corporation (“KC”), and Kubota Tractor Corporation (“KTC”) (these defendants are hereinafter referred to collectively as “the Kubota defendants”), asserting various claims after her son died as a result of injuries sustained when a Kubota ZD18 zero-turn lawnmower (“the ZD18 mower”) he was operating rolled over, pinning him underneath it. Following a three-week trial, the jury returned a verdict in favor of the Kubota defendants, and the trial court entered a judgment on that verdict. McDonald’s subsequent motion for a new trial was denied by the trial court, and McDonald now appeals, arguing that she is entitled to a new trial based on juror misconduct and errors the trial court made when instructing the jury. We affirm.
I.
On June 19, 2009, Jeremy, a laborer for the Town of Thorsby, began working at approximately 5:00 a.m., spraying for mosquitoes for approximately two hours before returning to the public-works shop at approximately 7:00 a.m. for further instructions from his supervisor, Terry Jackson. Jackson instructed him to finish mowing the lawn at the fire department and then to mow the grass at the girls’ softball field. Jackson was initially with Jeremy at the fire department, but he left at approximately 8:15 a.m. to travel to another location where a worker was having equipment problems. When Jackson left, Jeremy had the ZD18 mower he was using loaded onto a trailer and was preparing to leave for the softball field, which is approximately two blocks away.
At trial, Jackson testified that there was a heavy dew on the grass that morning and that he instructed Jeremy to mow the flat softball field before mowing the areas surrounding the field in order to allow the surrounding areas, which bordered sloping areas that had to be mowed either with push mowers or using power trimmers, additional time to dry. However, it appears that Jeremy first began mowing one of the areas surrounding the field. Although there were no witnesses to the accident, Jeremy apparently lost control of the ZD18 mower when he got too close to a slope, causing the ZD18 mower to lose traction and start sliding down the slope before hitting a small ditch or hole, where the 1,170-pound ZD18 mower rolled over on top of Jeremy, pinning him to the ground. At approximately 9:30 a.m., Jackson was returning to the area and was traveling past the softball field when a neighbor waved him down and told him a lawnmower was overturned near the field. Jackson and the neighbor then went to the lawnmower and discovered Jeremy underneath it; however, by that time Jeremy was deceased.
The ZD18 mower Jeremy was using at the time of the accident was designed in Japan by KC, manufactured by KMA at its Georgia plant, and distributed in the United States by KTC, a California-based corporation. At the time the ZD18 mower was first brought to market in 2001, it did not include any type of seatbelt or roll *155 over protection system (“ROPS”) to prevent the possibility of injury to its operator in a roll-over accident. However, in January 2002, after learning of a fatal roll-over accident that occurred in the summer of 2001, KTC introduced the Kubota ZD18F mower, which was virtually identical to the ZD18 mower with the addition of a built-in ROPS and a seatbelt. KTC also undertook a campaign to notify all Kubota dealers and ZD18 mower owners that a ROPS- and seatbelt-retrofit kit was available for purchase to provide protection to the operator in case the ZD18 mower rolled over during use.
The ZD18 mower in the instant case was purchased by the Town of Thorsby in May 2002 from Clanton Tractor & Equipment, Inc. (“CTE”); it did not come retrofitted with the ROPS and seatbelt kit. A KTC representative testified that service bulletins and other communications regarding the ROPS- and seatbelt-retrofit kits for ZD18s were sent to CTE both through email and United States mail in February, March, and April 2002, and again annually at least through 2009; however, CTE’s president could not recall ever receiving the information. The Town of Thorsby took the ZD18 to CTE for maintenance at least annually after its purchase but was never advised that a ROPS- and seatbelt-retrofit kit was available.
On June 7, 2010, McDonald sued KMA and CTE, asserting claims of breach of warranty, defective design under the Alabama Extended Manufacturer’s Liability Doctrine (“AEMLD”), negligence, and wantonness. KC and KTC were subsequently added as defendants. On February 22, 2012, McDonald entered into a pro tanto settlement with CTE, and CTE was dismissed from the case. On March 6, 2012, the case against the Kubota defendants proceeded to trial. Following the close of McDonald’s case, the trial court granted the Kubota defendants’ motion for a judgment as a matter of law on McDonald’s breach-of-warranty claim. The remaining claims were thereafter submitted to the jury, and, on March 22, 2012, the jury returned a verdict in favor of the Kubota defendants on all counts; the trial court thereafter entered judgment on that verdict in favor of the Kubota defendants. On May 4, 2012, McDonald moved for a new trial, alleging, among other things, that a juror had failed to give truthful responses during voir dire and that the trial court had failed to properly charge the jury. The Kubota defendants opposed the motion, and, following a hearing, the trial court denied the motion on July 15, 2012. On August 21, 2012, McDonald filed her notice of appeal.
II.
McDonald argues that the trial court erred by denying her motion for a new trial. In McBride v. Sheppard, 624 So.2d 1069, 1070-71 (Ala.1993), this Court stated:
“[T]he ruling on a motion for new trial is within the discretion of the trial court and ... the trial court’s decision carries a strong presumption of correctness. Gold Kist, Inc. v. Tedder, 580 So.2d 1321, 1322 (Ala.1991). The decision of the trial court should not be disturbed on appeal unless the record plainly and palpably shows that the trial court erred and that some legal right has been abused.”
Thus, we review the decision of the trial court to determine whether it exceeded its discretion in denying McDonald’s motion for a new trial.
III.
McDonald’s first argument is that the trial court exceeded its discretion in denying her motion for a new trial based on juror misconduct because, McDonald *156 alleges, juror J.L. failed to disclose during voir dire (1) that he knew a material witness — Jackson—and (2) that he had a contract to provide certain landscaping services to the City of Calera. In Union Mortgage Co. v. Barlow, 595 So.2d 1335 (Ala.1992), this Court considered another party’s claim that it was entitled to a new trial on the basis of similar allegations that jurors failed to respond truthfully to questions during voir dire. We stated then:
“Parties involved in litigation are entitled to true and honest answers from prospective jurors in order to help them exercise their discretion in the use of peremptory strikes and, when jurors fail to answer questions correctly, the parties are denied the exercise of that right. Martin v. Mansell, 357 So.2d 964 (Ala.1978). The proper inquiry on a motion for a new trial based on improper or nonexistent responses to voir dire questions is whether the response, or the lack of response, resulted in probable prejudice to the movant. Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970). Not every failure of a prospective juror to respond correctly to a voir dire question will entitle the losing party to a new trial. Wallace v. Campbell, 475 So.2d 521 (Ala.1985).
“The determination of whether the complaining party was prejudiced by a juror’s failure to answer voir dire questions is a matter within the discretion of the trial court and will not be reversed unless the court has abused its discretion. Freeman, supra. Some of the factors that this Court has approved for using to determine whether there was probable prejudice include: ‘temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.’ Freeman, 286 Ala. at 167, 238 So.2d at 336.”
595 So.2d at 1342-43. Applying these principles from Barlow to the facts of the instant case, it is apparent that the trial court did not exceed its discretion by failing to grant McDonald a new trial on the basis of juror misconduct.
With regard to McDonald’s assertion that J.L. failed to disclose that he knew the witness Terry Jackson, there is no evidence indicating that J.L., in fact, knew Terry Jackson. McDonald’s asserted factual basis for this claim is that Terry Jackson’s brother, Ricky Jackson, is married to J.L.’s niece and that J.L. was struck from a jury venire in a 1995 criminal case because the defendant was Ricky Jackson’s sister. However, none of this establishes that J.L. knew the witness Terry Jackson, though he apparently knew two other Jackson siblings.[1] In fact, when he was questioned about it after the trial, J.L. stated that he did not know Terry Jackson, did not recognize him when he testified at the trial, and did not know that he was the brother of his niece’s husband Ricky Jackson. Accordingly, we cannot say that the trial court exceeded its discretion in failing to grant McDonald a new trial on this basis.
McDonald next argues that she was entitled to a new trial because J.L. failed to disclose that he had a contract to perform grass and brush-cutting services for the City of Calera. McDonald states that this information was material because of the similarities between the work J.L. *157 performed for Calera and the work Jeremy was doing at the time of the accident that caused his death. McDonald further asserts that if this information had been known, she would have either sought to strike J.L. for cause or used a peremptory challenge to excuse him from the venire. The Kubota defendants argue that J.L. answered the questions presented him during voir dire truthfully and did not withhold any information about his business activities; rather, they argue, if McDonald did not adduce any information during voir dire that she now deems relevant, she should have asked more specific questions.
At the outset of the voir dire proceedings, potential jurors were asked to stand and to state their name, their spouse’s name, and the type of work they and their spouse do. Individual responses were not placed in the record; however, a subsequent exchange indicates that J.L. stated at that time that he was retired from working in the timber industry. When the venire was asked if anybody had a “business relationship with any Kubota entity,” J.L. responded affirmatively, and the following exchange took place with McDonald’s counsel:
“Q. Yes, sir. Your name?
“A. [J.L.]
“Q. [J.L.], what is your business relationship with Kubota?
“A. I have financed two tractors with them currently.
“Q. [J.L.], you have Kubota tractors?
“A. Yes, sir.
“Q. Would you tell me, are they agricultural tractors for work on your farm or around your house?
“A. That’s correct.
“Q. [J.L.], I believe you were in the timber business?
“A. That’s correct.
“Q. In the timber business, would you briefly tell me what you did in the timber business?
“A. I was a wood supplier for the paper mill and the state.
“Q. Were you familiar, [J.L.], with skidders and loggers and loaders as you worked in the timber industry?
“A. Yes, sir.
“Q. [J.L.], let me ask you this: On your Kubota tractors, do you know about what age those tractors are?
“A. One of them is like three years old, and the other is less than a year old.
“Q. [J.L.], I ask you this question: Do your tractors that you own and that you use and that you work with, do they have a roll-over protective structure over your head?
“A. Yes, they do.
“Q. And do they have a seat belt for you to use?
“A. Yes, they do.
“Q. [J.L.], do you use those safety equipment pieces?
“A. Sometimes.
“Q. When you feel that it is necessary?
“A. That’s correct.
“Q. At least, [J.L.] you have the opportunity to use them if you choose?
“A. That’s correct.
“Q. Thank you very much.”
Subsequently, counsel for McDonald questioned other members of the venire who also indicated that they had some sort of relationship with a Kubota entity, including S.P., whose dad used a Kubota tractor in his lawn-care company; D.S., who was retired from Bush Hog, Inc., and who had worked with Kubota lawn mowers in that capacity; C.M., who owned a Kubota tractor and had financed a Kubota utility vehicle; and C.S., whose husband was a diesel mechanic and worked on Kubota equip *158 ment in that capacity. After questioning all those who had initially responded affirmatively when asked if they had any relationship with a Kubota entity, McDonald’s attorney stated:
“Q. [D.S.], you answered some questions. I understand you have been in the business involving tractors, of course, attached to implements?
“A. [D.S.:] Yes, sir.
“Q. Anyone else in the business such as that of [D.S.], where you would have contact with a tractor or a mower or implement like that on a daily basis, or very frequent basis?
“(No response.)
“Q. I want to make sure. Have I talked to everyone here that does have a Kubota product?”
One additional member of the venire then identified himself as owning a Kubota tractor. After questioning him, counsel for McDonald asked one more time: “Anyone else here work with tractors or equipment? I think I’ve got everybody’s name.” No additional responses were elicited, and counsel moved on to other topics.
At the hearing on McDonald’s motion for a new trial, J.L. was called to testify, and he stated that he worked part-time approximately 15 hours a week under a contract with the City of Calera pulling a mower with his tractor. He further stated that, although he had been awarded the contract in the weeks before the trial, he did not begin working under the contract until after the trial and that he had previously done some similar work for Calera on a noncontract, as needed, basis. He also stated that he had never performed similar work for any other municipality and that he had not intentionally withheld any information during voir dire.
Based on this record, the trial court would have been justified in concluding that J.L. was honest and forthcoming during voir dire. Notably, J.L. was the first member of the venire to identify himself as owning Kubota equipment, and he thereafter answered all of counsel’s questions concerning the type of Kubota equipment he owned, i.e., agricultural tractors. Counsel did not specifically ask him if he ever used his Kubota tractors for commercial purposes. Moreover, counsel’s later question to the venire as a whole, asking if “anyone else ” was in a business involving frequent contact with a tractor or mower did not clearly call for a response from J.L. because he had already identified himself as owning Kubota tractors. In Davis v. State, 51 Ala.App. 200, 283 So.2d 650 (Ala.Crim.App.1973), the Court of Criminal Appeals reviewed a trial court’s decision denying a motion for a new trial because a juror allegedly had failed to disclose that his father worked in law enforcement. After reviewing the record, the court affirmed the trial court’s judgment, stating:
“It should be noted that the precise question asked by defense counsel was whether any juror or the spouse of any juror had been engaged in law enforcement. No question was asked concerning the juror’s parents.
“Certainly appellant was entitled on voir dire to examine the venire in regard to a parent’s affiliation with law enforcement; however, the record before us shows no such inquiry. Veniremen cannot be expected to reveal information not elicited by the litigants.”
51 Ala.App. at 202, 283 So.2d at 652 (final emphasis added). See also Boudreaux v. Pettaway, 108 So.3d 486, 495 (Ala.2012) (“Given the phrasing of the voir dire questions posed by defense counsel, the absence of any demonstration of willfulness on the part of allegedly untruthful jurors, the lack of materiality of the alleged undisclosed matters, and the limited scope of our review, we are unable to hold that the trial court exceeded its discretion in concluding both that the cause of the failures to respond was misunderstanding of the *159 questions posed and that no probable prejudice resulted.”); and Pearson v. State, 343 So.2d 538, 542 (Ala.Crim.App.1977) (“A failure to answer a question on voir dire furnishes no basis for complaint, if the question as applied to a particular juror does not clearly call for an express response.”). The trial court’s denial of McDonald’s motion for a new trial on juror-misconduct grounds is supported by the record, and McDonald is not entitled to relief on this argument.[2]
IV.
McDonald also argues that she is entitled to a new trial based on the trial court’s failure to give the jury certain instructions she requested, while giving the jury instructions requested by the Kubota defendants, which McDonald argues were not supported by the evidence. Specifically, the trial court rejected McDonald’s proposed jury instructions concerning combined and concurring negligence and gave instructions proposed by the Kubota defendants regarding their affirmative defense of assumption of the risk, while rejecting McDonald’s proposed instructions on that issue. The Kubota defendants argue not only that the trial court correctly instructed the jury, but also that McDonald waived any arguments to the contrary by failing to make sufficiently specific objections at trial.
We first consider whether McDonald’s arguments that the jury was improperly charged are properly before us. In Henriksen v. Roth, 12 So.3d 652, 660-61 (Ala.2008), we considered a similar argument:
“The Roth defendants contend that Henriksen failed to properly object to the trial court’s rulings regarding the giving and receiving of requested jury charges and, thus, that she did not preserve these issues for appeal. Rule 51, Ala. R. Civ. P., provides, in part:
“ ‘No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless that party objects thereto before the jury retires to consider its verdict, stating the matter objected to and the grounds of the objection.’
“(Emphasis added.) The Roth defendants contend that Henriksen failed to state the grounds of her objections with regard to the requested jury charges.
“During the pre-charge conference, Henriksen’s counsel apparently made specific objections to the trial court’s refusal to read Henriksen’s requested jury charge on lack of consent and the trial court’s giving of the Roth defendants’ instruction on emergency medical treatment. The pre-charge conference was not, however, on the record. During the trial, Henriksen’s counsel objected as follows:
‘“THE COURT: .... Exceptions from [Henriksen]?
“ ‘MR. FILLINGIM: Two, Your Hon- or, The reading of [the Roth defendants’] jury charge number 17 on emergency.
“ ‘THE COURT: Yeah, yeah. I note your exception.
“ ‘MR. FILLINGIM: And the failure to read [Henriksen’s] jury charge 33 on lack of consent.
*160 “‘THE COURT: Okay. As we discussed, probably off the record, I — I note your exception. I’ve already articulated my reason for not giving the absence of consent. I think that it’s virtually subsumed in this case by the lack of consent charge I gave. I think it really would be confusing and unnecessary, but I note your exception.’
“In McElmurry v. Uniroyal, Inc., 531 So.2d 859, 859-60 (Ala.1988), this Court stated:
“ ‘To be timely, an objection to the trial court’s oral charge must be made at the close of the court’s initial instructions to the jury, and it must be stated with sufficient clarity or specificity to preserve the error — in other words, an exception designating only the subject treated by the court in its oral charge is insufficient.... Although Rule 51 [, Ala. R. Civ. P.,] does not contemplate that the objecting party, in order to preserve for appellate review an erroneous instruction, deliver a discourse on the applicable law of the case, he must adequately state specific grounds for his objection ....
“ ‘Because the only objection raised by [the appellant] to the trial court’s jury instructions, both oral and written, referred to earlier objections made during the pre-charge conference, and because the record is devoid of any specific objection to the charge regarding punitive damages, the only issue raised on appeal, there is nothing for this Court to review. Rule 51, Ala. R. Civ. P., expressly requires that a party state the grounds for his objection; the failure to do so prevents appellate review of the alleged error.’
“(Citations omitted.) Furthermore, ‘[i]n order to comply with the policy behind Rule 51, a party should leave nothing at large in objecting to the court’s oral charge. The objection must be definite.’ Coleman v. Taber, 572 So.2d 399, 402 (Ala.1990).
“Henriksen did not provide specific objections on the record regarding the requested jury charges. Concerning the charge on emergency medical treatment, there is nothing in the trial transcript elucidating why Henriksen objected to the charge. Accordingly, the objection was not specific enough to preserve any alleged error for review on appeal.”
Thus, in Henriksen, we held that counsel’s objection to “[t]he reading of the Roth defendants’ jury charge number 17 on emergency” was not “specific enough to preserve any alleged error for review on appeal.” 12 So.3d at 660-61.
In the instant case, 'the trial court charged the jury and then asked whether “the plaintiff [was] satisfied with the court’s instructions.” Counsel for McDonald replied: “Your Honor, the plaintiff takes exception to the court not giving the plaintiffs charge number 43, number 44, number 45, number 47, 48, 49, 50, 51, 52, 53, and 54. Otherwise, we’re satisfied.” McDonald argues that the spirit of Rule 51, Ala. R. Civ. P., was complied with by her objection, inasmuch as she had previously stated specific objections regarding the jury instructions in the charge conference conducted by the trial court before the jury instructions were given. Accordingly, she argues, “there is no real disagreement that the trial court was presented with [her] reasons and arguments.” (McDonald’s brief, p. 58 n. 19.) The Kubo-ta defendants emphasize that the charge conference was not transcribed and was not made a part of the record.
These are essentially the same facts as in Henriksen, in which we noted that, during the off-the-record charge conference, “Henriksen’s counsel apparently made specific objections to the trial court’s refusal to read Henriksen’s re *161 quested jury charge on lack of consent and the trial court’s giving of the Roth defendants’ instruction on emergency medical treatment.” 12 So.3d at 660. However, notwithstanding the fact that specific arguments were apparently made at the charge conference, the Court held that the nonspecific objection made following the jury charge was insufficient to preserve the issue for appellate review.[3] 12 So.3d at 661. In this case, we have no reason to doubt McDonald’s assertion that she made specific arguments outlining her objections to the jury instructions at the charge conference; however, arguments made at a charge conference do not preserve a subsequent challenge to a jury instruction on appeal. Rather, an objection “must be made at the close of the court’s initial instructions to the jury, and it must be stated with sufficient clarity or specificity to preserve the error.... ” McElmurry v. Uniroyal, Inc., 531 So.2d 859, 859 (Ala.1988). The objection made by McDonald at the close of the trial court’s instructions to the jury was not specific and accordingly fails to meet the requirements of Rule 51, Ala. R. Civ. P., for preserving any alleged error in jury instructions for appellate review. See also Burnett v. Martin, 405 So.2d 23, 27 (Ala.1981) (holding that an exception to “the charge[s] having to do with contributory negligence — Charges Two, Three, and Four” was insufficient to preserve issue for appeal). Because the alleged error was not preserved for review, we need not consider the merits of McDonald’s argument that the jury was not given proper instructions.
V.
Following a three-week trial, the jury returned a verdict in favor of the Kubota defendants on the AEMLD, negligence, and wantonness claims asserted against them by McDonald following her son Jeremy’s death in an accident involving a Ku-bota ZD18 mower. The trial court entered judgment accordingly and denied McDonald’s subsequent motion seeking a new trial on grounds of juror misconduct and the giving of improper jury instructions. For the reasons stated above, the trial court did not exceed its discretion in denying that motion for a new trial; its judgment is hereby affirmed.
AFFIRMED.
MOORE, C.J., and PARKER and WISE, JJ., concur.
SHAW, J., concurs in the result.

. We note that the last name "Jackson” is hardly unique. See, e.g., Peaceable Planet, Inc. v. Ty, Inc., 362 F.3d 986, 991 (7th Cir.2004) ("[Niles] is not a common name, like 'Smith' or ‘Jackson.’ ").

. We further note that the Kubota defendants in fact moved to strike J.L. from the venire for cause at the close of voir dire based on J.L.'s admission that he was a long-time friend of Jeremy's grandfather and that it might accordingly be "difficult” to return a verdict for the Kubota defendants because of that relationship. In opposing that motion, counsel for McDonald emphasized that J.L. "was not equivocal in his final answer,” indicating that he would be fair and impartial should he be selected for the jury.

. We further note that the objection in the present case was even less specific than the objection in Henriksen that we held to be insufficient inasmuch as, in Henriksen, at least the general topic of the charge objected to was identified (emergency), while the objections in this case identified only the numbers of the charges being challenged.